**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

NOLEF TURNS, INC., et al.,           )
                                     )
      Plaintiffs,                )
                                     )
v.                                   )        Civil Action No. 3:23-cv-232-JAG
                                     )
GLENN YOUNGKIN, Governor of Virginia, )
in his official capacity, et al.,    )
                                     )
      Defendants.                )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE COMPLAINT UNDER**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Jason S. Miyares
   *Attorney General*

Steven G. Popps (VSB #80817)
   *Deputy Attorney General*


Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
AFerguson@oag.state.va.us

Andrew N. Ferguson (VSB #86583)
   *Solicitor General*

Erika L. Maley (VSB #97533)
   *Principal Deputy Solicitor General*

Kevin M. Gallagher (VSB #87548)
   *Deputy Solicitor General*

Travis S. Andrews (VSB #90520)
   *Assistant Attorney General*

*Counsel for Defendants Glenn Youngkin and Kay Coles James*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    I.   Legal Background ...................................................................................................... 2

    II.  Factual and Procedural Background ......................................................................... 5

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.   This Court lacks jurisdiction to adjudicate Plaintiffs' claims ................................ 8

        A.   Nolef Turns lacks standing .............................................................................. 8

        B.   Williams lacks standing and his claims are not ripe ....................................... 11

    II.  Plaintiffs' claims lack merit and should be dismissed ........................................ 14

        A.   The Fourteenth Amendment expressly provides that States may exclude felons from voting ................................................................................................................. 15

        B.   The First Amendment does not guarantee felons the right to vote .............................. 18

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze,*
460 U.S. 780 (1983)...................................................................................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................................8

*Association for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health &*
*Mental Retardation Ctr. Bd. of Trs.,*
19 F.3d 241 (5th Cir. 1994) .......................................................................................10

*Beacham v. Braterman,*
300 F. Supp. 182 (S.D. Fla. 1969) ............................................................................16

*Beacham v. Braterman,*
396 U.S. 12 (1969)......................................................................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................................................8

*Blunt v. Lower Merion Sch. Dist.,*
767 F.3d 247 (3d Cir. 2014)........................................................................................11

*Buckley v. American Constitutional Law Found., Inc.,*
525 U.S. 182 (1999).....................................................................................................21

*City of Lakewood v. Plain Dealer Publ'g Co.,*
486 U.S. 750 (1988)....................................................................................................20

*City of Sacramento v. Lewis,*
523 U.S. 833 (1998)....................................................................................................19

*Connecticut Board of Pardons v. Dumschat,*
452 U.S. 458 (1981)....................................................................................................17

*Doe v. Virginia Dep't of State Police,*
713 F.3d 745 (4th Cir. 2013) ...........................................................................11, 12, 13

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
637 F.3d 435 (4th Cir. 2011) .......................................................................................7

*Edley-Worford v. Virginia Conf. of United Methodist Church,*
430 F. Supp. 3d 132 (E.D. Va. 2019) ..........................................................................8

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994) ...................................................................10

*Farrakhan v. Locke*,
    987 F. Supp. 1304 (E.D. Wash. 1997) ..............................................18, 19

*Fincher v. Scott*,
    411 U.S. 961 (1973) ...................................................................................16

*Forsyth Cnty., Ga. v. Nationalist Movement*,
    505 U.S. 123 (1992) ...................................................................................20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .....................................................................................9

*Fusaro v. Cogan*,
    930 F.3d 241 (4th Cir. 2019) .....................................................................19

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ...................................................................................20

*Gallagher v. Commonwealth*,
    284 Va. 444 (2012) ......................................................................................2

*Gettman v. Drug Enf't Admin.*,
    290 F.3d 430 (D.C. Cir. 2002) ..................................................................11

*Grosjean v. American Press Co.*,
    297 U.S. 233 (1936) ...................................................................................18

*Guggenheimer Health & Rehab. Ctr. for Bedat v. Cary*,
    2018 WL 1830736 (W.D. Va. Apr. 17, 2018) ..........................................11

*Hand v. Scott*,
    888 F.3d 1206 (11th Cir. 2018) ........................................................ *passim*

*Harvey v. Brewer*,
    605 F.3d 1067 (9th Cir. 2010) ..................................................................17

*Hayden v. Pataki*,
    No. 00 Civ. 8586(LMM), 2004 WL 1335921 (S.D.N.Y. June 14, 2004)..........................18, 19

*Heap v. Carter*,
    112 F. Supp. 3d 402 (E.D. Va. 2015) .......................................................11

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013)...................................................................................14

*Howard v. Gilmore*,
   205 F.3d 1333, 2000 WL 203984 (4th Cir. Feb. 23, 2000) ...................................15, 18, 19, 22

*Howell v. McAuliffe*,
   292 Va. 320 (2016) .........................................................................................................3, 4

*Johnson v. Bush*,
   214 F. Supp. 2d 1333 (S.D. Fla. 2002), *aff'd sub nom. Johnson v. Governor of
   Fla.*, 405 F.3d 1214 (11th Cir. 2005) (en banc) .........................................................18

*Kronlund v. Honstein*,
   327 F. Supp. 71 (N.D. Ga. 1971) ................................................................................18

*Kusper v. Pontikes*,
   414 U.S. 51 (1973) ......................................................................................................22

*Lane v. Holder*,
   703 F.3d 668 (4th Cir. 2012) .................................................................................1, 9, 10

*Lostutter v. Beshear*,
   No. 6:18-277-KKC, 2022 WL 2912466 (E.D. Ky. July 22, 2022), *appeal filed
   Lostutter*, 2022 WL 2912466 (6th Cir. Aug. 12, 2022) ...............................................18

*Mandel v. Bradley*,
   432 U.S. 173 (1977) ....................................................................................................16

*Norman v. Reed*,
   502 U.S. 279 (1992) ....................................................................................................22

*North Carolina State Conf. of the NAACP v. Raymond*,
   981 F.3d 295 (4th Cir. 2020) ...................................................................................9, 10

*Ohio Adult Parole Authority v. Woodard*.
   523 U.S. 272 (1998) ....................................................................................................17

*In re Phillips*,
   265 Va. 81 (2003) ..........................................................................................................3

*Renne v. Geary*,
   501 U.S. 312 (1991) ....................................................................................................12

*Republican Party of N.C. v. Martin*,
   980 F.2d 943 (4th Cir. 1992) ......................................................................................19

*Rescue Army v. Municipal Court of L.A.*,
   331 U.S. 549 (1947) ....................................................................................................11

*Richardson v. Ramirez,*
  418 U.S. 24 (1974) ............................................................................................ *passim*

*Richmond, Fredericksburg & Potomac R. Co. v. United States,*
  945 F.2d 765 (4th Cir. 1991) ...................................................................................8

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
  487 U.S. 781 (1988) ...............................................................................................21

*Sierra Club v. Morton,*
  405 U.S. 727 (1972) .................................................................................................9

*Simon v. Eastern Ky. Welfare Rights Org.,*
  426 U.S. 26 (1976) .................................................................................................10

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,*
  713 F.3d 175 (4th Cir. 2013) ................................................................................8, 9

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ..................................................................................12, 13, 14

*Taubman Realty Grp. v. Mineta,*
  320 F.3d 475 (4th Cir. 2003) ...................................................................................7

*Timmons v. Twin Cities Area New Party,*
  520 U.S. 351 (1997) ...............................................................................................21

*United States v. Poole,*
  531 F.3d 263 (4th Cir. 2008) ...................................................................................7

*United States v. Roof,*
  10 F.4th 314 (4th Cir. 2021) ..................................................................................15

*Washington Post v. McManus,*
  944 F.3d 506 (4th Cir. 2019) .................................................................................21

*Washington v. Finlay,*
  664 F.2d 913 (4th Cir. 1981) .................................................................1, 14, 19, 22

*Williams v. Rhodes,*
  393 U.S. 23 (1968) .................................................................................................22

*Wright v. North Carolina,*
  787 F.3d 256 (4th Cir. 2015) .................................................................................15

**Statutes**

Va. Code § 24.2-101 .................................................................................................2, 13

v

Va. Code § 53.1-231.1 ............................................................................................3, 5

Va. Code § 53.1-231.2 ............................................................................................3, 5

**Other Authorities**

2 A.E. Dick Howard, Commentaries on the Constitution of Virginia (1974) ...............................2

Federal Rule of Civil Procedure 12(b)(1) ................................................................7, 8

Federal Rule of Civil Procedure 12(b)(6) ...................................................................8

Sec'y of the Commonwealth,
    https://www.restore.virginia.gov/media/governorvirginiagov/restoration-of-
    rights/pdf/ror_form.pdf (last visited June 15, 2023) ...................................................5

Sec'y of the Commonwealth, https://www.restore.virginia.gov/restoration-of-
    rights-process/ (last visited June 15, 2023) ..........................................................5

Sec'y of the Commonwealth, *Restoration of Rights Process*,
    https://www.restore.virginia.gov/restoration-of-rights-process/ (last visited
    June 15, 2023) ..........................................................................................5

U.S. Const. amend. XIV ............................................................................... *passim*

Va. Const. art. II, § 1 .....................................................................................2, 13

Va. Const. art. V, § 12 ......................................................................................2, 3

## INTRODUCTION

The Constitution allows States to "exclude from the franchise convicted felons who have completed their sentences and paroles." *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974). Section 2 of the Fourteenth Amendment expressly addresses the issue, providing sanctions for States that restrict the franchise, "*except* for participation in rebellion, or other crime." U.S. Const. amend. XIV, § 2 (emphasis added). Whether, and under what circumstances, to grant felons the right to vote is a policy question for States; there is no constitutional requirement that States have any specific process, or any process at all, for re-enfranchisement. Virginia's choice to place the question of felony re-enfranchisement within the ambit of the Governor's discretionary clemency authority is entirely constitutional.

Plaintiffs attempt to avoid this conclusion by relying on inapposite First Amendment doctrines for their claims against Virginia's re-enfranchisement process. But even if the First Amendment applies to the right to vote at all, the protections "do not in any event extend beyond those more directly, and perhaps only, provided by the fourteenth and fifteenth amendments." *Washington v. Finlay*, 664 F.2d 913, 927 (4th Cir. 1981). For the right to vote, "the specific language of the Fourteenth Amendment controls over the First Amendment's more general terms." *Hand v. Scott*, 888 F.3d 1206, 1212 (11th Cir. 2018). Unsurprisingly, then, "every First Amendment challenge to a discretionary vote-restoration regime" has been "summarily rebuffed." *Ibid.* (collecting cases). This Court should reach the same result here and dismiss the complaint.

Indeed, this Court should dismiss the complaint without even reaching the merits because Plaintiffs lack standing. Plaintiff Nolef Turns, Inc., an organization that advocates on behalf of felons, has not alleged any cognizable injury. Its voluntary choice to divert additional money and staff time to helping felons apply for re-enfranchisement does not establish an injury in fact under Article III. *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012). The organization also cannot

1

establish associational standing because it alleges nothing about its members at all, much less facts demonstrating their standing to sue. And as for plaintiff Gregory Williams, Virginia's felon re-enfranchisement system makes the Governor of Virginia the initial decisionmaker on Williams' application for re-enfranchisement. Williams alleges that his application is pending with the Governor and has not yet been decided—an application that he submitted fewer than three weeks before filing this lawsuit. He therefore has not suffered the requisite injury-in-fact and his claims are unripe. This Court accordingly should dismiss Plaintiffs' complaint for want of jurisdiction or because it is meritless.

## BACKGROUND

### I.  Legal Background

Article II, Section 1 of the Constitution of Virginia provides that "[n]o person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." Va. Const. art. II, § 1; see also Va. Code § 24.2-101 ("No person who has been convicted of a felony shall be a qualified voter unless his civil rights have been restored by the Governor or other appropriate authority.").

As chief executive, the Governor of Virginia has the exclusive power of clemency under the Constitution of Virginia. For over 170 years, the Constitution of Virginia has vested the Governor with "the power to act alone in granting reprieves and pardons." *Gallagher v. Commonwealth*, 284 Va. 444, 451 (2012). As part of this clemency power, the Governor has authority "to 'remove political disabilities consequent to conviction of offenses,'" including the power to restore voting rights. *Ibid.* (quoting 2 A.E. Dick Howard, Commentaries on the Constitution of Virginia, 641–42 (1974)); see Va. Const. art. V, § 12 (granting the Governor, among other clemency powers, the power "to grant reprieves and pardons after conviction" and "to remove political disabilities consequent upon conviction for offenses committed prior or

subsequent to the adoption of this Constitution"). Thus, the power "to remove the felon's political disabilities remains vested solely in the Governor." *In re Phillips*, 265 Va. 81, 87–88 (2003).

The Virginia General Assembly has recognized the Governor's authority to "establish[]" the "process . . . for the review of applications for restoration of civil rights." Va. Code § 53.1-231.1 (creating an administrative scheme for notifying convicted felons of the process by which they may apply for voting rights restoration and for processing the applications after they reach the Secretary of the Commonwealth). For certain convicted felons—principally those who were not convicted of a violent felony, certain other enumerated felonies, or election fraud—a circuit court may approve an application for re-enfranchisement. *Id.* § 53.1-231.2. This provision, however, merely "establishe[s] [the] standards for identifying felons who may qualify for restoration of their eligibility to vote"; a "circuit court's function under the statute is limited to making a determination whether a petitioner has presented competent evidence supporting the specified statutory criteria, and a court's approval or denial of a petition and transmittal of its order . . . completes this statutory process." *In re Phillips*, 265 Va. at 86. Indeed, even for such felons, Virginia law leaves the ultimate decision to the Governor, "who may grant or deny the petition." Va. Code § 53.1-231.2. The Governor's denial of an application is "a final decision" from which the applicant has "no right of appeal." *Ibid.*

Although the Governor's clemency power "may be broad" under Virginia law, it is "not absolute." *Howell v. McAuliffe*, 292 Va. 320, 327 (2016). The Governor must "communicate to the General Assembly, at each regular session, particulars of every case of fine or penalty remitted, of reprieve or pardon granted, and of punishment commuted, with his reasons for remitting, granting, or commuting the same." Va. Const. art. V, § 12. This constitutional requirement that the Governor exercise his clemency powers on an individual, case-by-case basis applies equally to the

removal of political disabilities for felons, including re-enfranchisement. See *Howell*, 292 Va. at 343. Although the Governor "can use his clemency powers to mitigate a general rule of law on a case-by-case basis," that "truism does not mean he can effectively rewrite the general rule of law and replace it with a categorical exception." *Id.* at 349.

In 2016, then-Governor Terry McAuliffe issued an executive order that purported to re-enfranchise approximately 206,000 Virginians who had been convicted of a felony and who had completed their sentences of incarceration and any periods of supervised release. *Id.* at 327–28. The Supreme Court of Virginia held that the executive order violated the Constitution of Virginia, because the "assertion that a Virginia Governor has the power to grant blanket, group pardons is irreconcilable with the specific requirement in Article V, Section 12 that the Governor communicate to the General Assembly the 'particulars of every case' and state his 'reasons' for each pardon." *Id.* at 342. That constitutional "requirement implies a specificity and particularity wholly lacking in a blanket, group pardon of a host of unnamed and, to some extent, still unknown number of convicted felons." *Ibid.* Further, the Supreme Court of Virginia held that the executive order improperly "invert[ed]" Article II, Section 1 to make felons categorically eligible to vote so long as they completed their sentence, rather than categorically excluding all felons from the franchise absent the Governor's restoration, as the Virginia Constitution actually does. *Id.* at 326. This could not be, the court concluded: Governors must exercise their clemency powers "on an individualized case-by-case basis taking into account the specific circumstances of each." *Id.* at 341.

Consistently with the *Howell* ruling, Governor Youngkin instituted an individualized, case-by-case review for re-enfranchisement applications by felons. As outlined in the Code of Virginia, the Secretary of the Commonwealth (the "Secretary") administers the process for restoration of

civil rights. See Va. Code §§ 53.1-231.1, 53.1-231.2. That process begins with the submission of an application through the Secretary's website, https://www.restore.virginia.gov/. Compl. ¶ 23; see Sec'y of the Commonwealth, https://www.restore.virginia.gov/restoration-of-rights-process/ (last visited June 15, 2023). A felon is "eligible to apply to have his/her rights restored by the Governor" if he or she is "no longer incarcerated." *Ibid*. The felon must disclose the nature of his or her conviction, whether the conviction was for a violent felony, whether he or she has finished serving all terms of his or her incarceration, whether he or she is serving on probation, parole, or other state supervision (and, if so, the expected end date), and whether he or she has paid or currently is paying "all fines, fees, and restitution" pertaining to the felony conviction. Sec'y of the Commonwealth, https://www.restore.virginia.gov/media/governorvirginiagov/restoration-of-rights/pdf/ror_form.pdf (last visited June 15, 2023). The Secretary reviews each application and "works with other various state agencies to consider who may be eligible to have their rights restored." Sec'y of the Commonwealth, *Restoration of Rights Process*, https://www.restore.virginia.gov/restoration-of-rights-process/ (last visited June 15, 2023). The Secretary "thoroughly review[s]" all applications, including "records with various state agencies to ensure the individual meets the Governor's standards for restoration of rights." *Ibid.* Upon approval of an application, the Governor, through the Secretary, issues personalized restoration orders. *Ibid.*

## II. Factual and Procedural Background

Plaintiff Nolef Turns, Inc. alleges that it is a Virginia-based, non-profit organization providing services to "those affected by the criminal justice system." Compl. ¶ 15 (ECF No. 1). Among other things, Nolef Turns' staff members help convicted felons apply for re-enfranchisement. *Ibid.* As an organization, Nolef Turns does not itself have a right to vote and cannot submit its own application for re-enfranchisement. See generally *id.* ¶¶ 15, 40–45. Nolef

Turns alleges that it intends "to divert paid staff time, money, and other resources" to educating felons "on the changes in Virginia's restoration system," *id.* ¶ 41; that its staff members will "spend[] more time and resources" helping applicants submit their paperwork, *id.* ¶ 42; that, as a result of the Secretary's more thorough investigation of each applicant, it will "engage more deeply with" its clients by "helping them to respond to Virginia state agencies' informational requests," *id.* ¶ 43; and that its staff will "call[] for status updates over far longer periods of time" due to the alleged indefinite deadline for approving or denying an application, *id.* ¶ 44.

Plaintiff Gregory Williams alleges that he was convicted of a felony in Virginia state court in or around 1988, *id.* ¶ 16; that he served 19 years in prison, was released in 2007, and was on parole until 2010, *ibid.*; and that, at an unidentified point after his release, he "applied for restoration of voting rights, and his application is currently pending before Defendant Governor Youngkin," *id.* ¶ 9. Based on that sparse information, Defendants were able to locate more information about Williams in State records. See Ex. A, Declaration of Kay Coles James ¶¶ 3–4. On December 20, 1988, Williams was convicted in Henrico Circuit Court of one count of felony robbery and one count of the use of a firearm in the commission of a felony due to an armed robbery on November 1, 1988, for which he was sentenced to fifteen years in prison. *Id.* ¶ 7. On February 8, 1989, Williams was convicted in Henrico Circuit Court for six offenses related to three different armed robberies that took place on October 3, 1988, October 5, 1988, and October 7, 1988. *Id.* ¶ 8. He was convicted of three counts of felony robbery and three counts of the use of a firearm in the commission of a felony for those armed robberies and sentenced to fifty-two years in prison, with thirty years suspended. *Ibid.* All told, Williams was sentenced to thirty-seven years of imprisonment. *Id.* ¶ 9. After serving nineteen years of his sentence, he was released on mandatory parole on October 19, 2007, and discharged from parole supervision on October 19,

2010. *Ibid.* He did not file a rights restoration application with the Secretary's office until March 17, 2023,[1] over fifteen years after he was released from prison and only twenty days before he filed this lawsuit. *Id.* ¶ 5.

On April 6, 2023, Nolef Turns and Williams (collectively, Plaintiffs) filed a complaint contending that Virginia's re-enfranchisement system violates the First Amendment. The complaint claims that "conditioning the enjoyment of the right to vote on the exercise of unfettered official discretion and arbitrary decision-making violates the First Amendment." Compl. ¶ 3; see also *id.* ¶¶ 47–56. It further claims that Virginia's re-enfranchisement system violates the First Amendment due to the "lack of reasonable, definite time limits for decisions on voting rights restoration applications." *Id.* ¶¶ 57–66. The complaint names as defendants Governor Glenn Youngkin and Secretary of the Commonwealth of Virginia Kay Coles James (collectively, Defendants). *Id.* ¶ 2. Plaintiffs ask this Court to declare that Virginia's re-enfranchisement system is unconstitutional, to enjoin its operation, and to impose "a non-arbitrary voting rights restoration scheme which restores the right to vote based upon specific, neutral, objective, and uniform rules and/or criteria and within reasonable, definite time limits." *Id.* at Prayer for Relief.

## LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." The plaintiff has the burden of establishing the existence of subject matter jurisdiction and standing. *Taubman Realty Grp. v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003). "A court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263,

---

[1] Although Williams did not attach to the complaint a copy of his rights restoration application, documents incorporated by reference in the complaint are considered as part of the complaint for purposes of evaluating a motion to dismiss. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

274 (4th Cir. 2008). Further, in "considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Edley-Worford v. Virginia Conf. of United Methodist Church*, 430 F. Supp. 3d 132, 133–34 (E.D. Va. 2019) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

A defendant may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ibid.*

## ARGUMENT

### I. This Court lacks jurisdiction to adjudicate Plaintiffs' claims

First, Plaintiffs' claims should be dismissed because this Court lacks jurisdiction. Nolef Turns lacks standing either in its own right or under a theory of associational standing, and Williams lack standing and his claims are unripe.

#### A. Nolef Turns lacks standing

Nolef Turns lacks standing "either in its own right or as a representative of its members." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). First, Nolef Turns does not have standing in its own right because it has not alleged facts showing that it suffered a cognizable injury in fact. To establish standing,

8

Nolef Turns must adequately allege facts showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ibid.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

An organization may establish standing by demonstrating that the defendants' actions "perceptibly impair" its ability "to carry out its mission" and "consequently drain [its] resources." *North Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (cleaned up). But this "standard is not met simply because an organization makes a unilateral and uncompelled choice to shift its resources . . . to address a government action." *Ibid.* (quotation marks omitted). A "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (quotation marks omitted). Although a diversion of an organization's resources "reduc[es] the funds available for other purposes," it "results not from any actions taken by the defendant, but rather from the organization's own budgetary choices." *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (quoting *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (cleaned up)). Thus, an organization's "mere expense" of time and money in response to a government's action "does not constitute an injury in fact." *Ibid.*

Nolef Turns' allegations fail to establish a cognizable injury in fact to the organization under these standards. Nolef Turns alleges that Defendants' actions "force the organization to divert substantial paid staff time, money, and other resources to assisting their clients through" the

re-enfranchisement process. Compl. ¶ 40. But Defendants are not "forcing" Nolef Turns to take any actions regarding re-enfranchisement applications; Nolef Turns is *choosing* to allocate its resources to the issue. Nolef Turns' "unilateral and uncompelled choice to shift its resources" is not a cognizable injury. *Raymond*, 981 F.3d at 301 (quotation marks omitted). Indeed, holding to the contrary "would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'" *Lane*, 703 F.3d at 675 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)); see also *Association for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (noting that finding standing for an organization that redirects some of its resources to litigation and legal counseling in response to actions of another party would "impl[y] that any sincere plaintiff could bootstrap standing by expending its resources in response to actions of another"). "Such a rule would not comport with the case or controversy requirement of Article III of the Constitution." *Lane*, 703 F.3d at 675.

Second, Nolef Turns likewise fails to meet the requirements of associational standing. An organization may establish that it has associational standing to sue on behalf of its members by adequately alleging that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Lane*, 703 F.3d at 674 n.6. Nolef Turns does not satisfy this test because it has not adequately alleged *anything* about its members, much less facts demonstrating that it has members with standing to sue in their own right. Indeed, Nolef Turns' allegations focus solely on its staff and its "clients"—it does not allege that it has members at all. See, *e.g.*, Compl. ¶¶ 40–42 (describing Nolef Turns' "paid staff"); *id.* ¶¶ 40, 42 (describing Nolef Turns' "clients").

With no allegations identifying any members of the organization, and demonstrating that such members have standing to sue, Nolef Turns cannot satisfy the requirements for associational standing. See, *e.g.*, *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (holding that lack of membership is fatal to claim of associational standing); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286–88 (3d Cir. 2014) (holding complaint failed to demonstrate organization could have and did have members); *Heap v. Carter*, 112 F. Supp. 3d 402, 418 (E.D. Va. 2015) (finding no associational standing where complaint "provided no details about who the membership is or whether [the organization] truly can be considered a voluntary membership organization or a functional equivalent"); see also *Guggenheimer Health & Rehab. Ctr. for Bedat v. Cary*, 2018 WL 1830736, at *4 (W.D. Va. Apr. 17, 2018) (holding that a nursing home did not have organizational standing because its residents were "clients or customers, not its members" (collecting cases)). Accordingly, Nolef Turns does not have standing under any theory.

### B.  Williams lacks standing and his claims are not ripe

Williams' claims should be dismissed because he lacks standing and his claims are unripe. Where a plaintiff has not completed "the processes provided for by" Virginia law, federal claims are "required to wait until [the plaintiff] obtains a decision from the Virginia authorities in order to contend with an injury—if it still exists after [the plaintiff] petitions those entities—that affects [the plaintiff] with finality." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 753–54 & n.5 (4th Cir. 2013). For felons seeking re-enfranchisement, Virginia law makes the Governor the relevant "Virginia authorit[y]" to determine their eligibility. See *ibid.* Further, the doctrine of ripeness prevents judicial consideration of a controversy until it is presented in a "clean-cut and concrete form." *Rescue Army v. Municipal Court of L.A.*, 331 U.S. 549, 584 (1947). A claim is not ripe "where an injury is contingent upon a decision to be made by a third party that has not yet acted." *Doe*, 713 F.3d at 758. "The plaintiff, as the party invoking federal jurisdiction, bears the

burden of establishing these elements" of standing and ripeness. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Renne v. Geary*, 501 U.S. 312, 315 (1991). Williams alleges that he has not yet obtained a decision from the Governor on his re-enfranchisement application. But he waited almost sixteen years after his release from prison before filing an application just weeks before filing this lawsuit. He therefore lacks standing and his claims are not ripe.

In very similar circumstances, the Fourth Circuit has explained that "federalism concerns" and "respect for Virginia's processes" dictates "special caution in evaluating the requirement of standing" where the state decision-making process remains ongoing. *Doe*, 713 F.3d at 753. In *Doe*, the plaintiff brought a § 1983 suit challenging the constitutionality of a Virginia statute denying her access to school property because she had been designated as a sexually violent offender. *Id.* at 750. When she filed suit, however, she had not availed herself of a Virginia law that allowed her to petition a Virginia circuit court or school board for permission to enter school grounds notwithstanding her status as a sexually violent offender. *Id.* at 751–52. The Fourth Circuit concluded that her claims were nonjusticiable because she had not availed herself of the opportunity to obtain permission from the Virginia circuit court and school board, and thereby had denied those decisionmakers the chance to provide her the relief she sought. Principles of federalism and comity, the court explained, "counsel in favor of providing at the least an opportunity for the processes provided for by Virginia's statute to address [the plaintiff's] claims before intervening." *Id.* at 753. Federal courts are thus "required to wait until [the plaintiff] obtains a decision from the Virginia authorities" to determine whether the plaintiff has an injury "that affects [him] with finality." *Id.* at 754 n.5. As Judge Keenan elaborated in her concurrence in *Doe*, until the plaintiff "resort[s] to the process afforded" him, state entities would "not arrive at a

definitive position on the issue that inflicts an actual, concrete injury." *Id.* at 763 (Keenan, J., concurring) (quotation marks omitted).

Similar to *Doe*, the Virginia Constitution and the Virginia General Assembly here have provided a process whereby an individual like Williams, who was convicted of a felony but wishes to have his voting rights restored, can obtain precisely that relief. See Va. Const. art. II, § 1; Va. Code § 24.2-101. Williams alleges that he has submitted a re-enfranchisement application to the Governor, but has not yet received a decision on that application. See Compl. ¶ 16. In fact, he was released from prison in 2007, but did not file a rights restoration application with the Secretary's office until March 17, 2023, over fifteen years after he was released from prison and only twenty days before he filed this lawsuit. See pp.6–7, *supra*. He has thus not completed the processes provided for by Virginia law; indeed, he had barely begun them before he filed his lawsuit. "[F]ederalism concerns" and "respect for Virginia's processes" dictates "special caution" because the state decision-making process remains ongoing. *Doe*, 713 F.3d at 753. The "initial decisionmaker" has not made a decision that "affects [Williams] with finality," and his federal suit is therefore "required to wait." *Id.* at 754 n.5; *id.* at 763 (Keenan, J., concurring). If the Governor were to grant Williams' application, he would be eligible to vote in the next election. By contrast, should his application be rejected, his alleged injury would be sufficiently concrete and final at that time. Williams gave the Governor fewer than three weeks to make this determination before running to the courthouse.

Williams cannot plead around his lack of standing by contending that he is "per se injured by being subjected to an arbitrary voting rights restoration process with no reasonable, definite time limits." Compl. ¶ 46. An injury in fact must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 578 U.S. at 339 (quotation marks

13

omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Ibid.* (quotation marks omitted)*.* Williams' belief that the re-enfranchisement application process should have "reasonable, definite time limits" is not an interest "particularized" to him; the alleged interest is, instead, a "generally available grievance about government" that he shares in common with every felon in Virginia. *Hollingsworth v. Perry*, 570 U.S. 693, 706–07 (2013). Accordingly, Williams currently lacks standing to pursue his claims in federal court, and his claims are unripe.

## II.    Plaintiffs' claims lack merit and should be dismissed

If this Court reaches the merits, the complaint should also be dismissed for failure to state a claim. Section 2 of the Fourteenth Amendment provides that States may permanently disenfranchise felons. U.S. Const. amend. XIV, § 2; *Richardson v. Ramirez*, 418 U.S. 24, 43–52 (1974). Whether, and under what conditions, a felon may vote is a policy question left exclusively and entirely to the States. There is no constitutional requirement that States re-enfranchise felons, or that they use any particular process for considering felon re-enfranchisement applications.

Plaintiffs try to avoid the settled law on this issue by recasting their claims under the First Amendment, relying on First Amendment limitations on permitting requirements for protected speech. But numerous cases have uniformly rejected this argument. The First Amendment, assuming it applies at all, "offers no protection of voting rights beyond that afforded by the fourteenth or fifteenth amendments." *Washington v. Finlay*, 664 F.2d 913, 928 (4th Cir. 1981). And in cases involving re-enfranchisement processes for felons, "the specific language of the Fourteenth Amendment controls over the First Amendment's more general terms." *Hand v. Scott*, 888 F.3d 1206, 1212 (11th Cir. 2018). For that reason, "every First Amendment challenge to a discretionary vote-restoration regime" has been "summarily rebuffed." *Ibid.* (collecting cases). This Court should likewise dismiss Plaintiffs' meritless claims here.

### A. The Fourteenth Amendment expressly provides that States may exclude felons from voting

The Constitution does not provide felons a right to vote. The Equal Protection Clause in Section 1 of the Fourteenth Amendment guarantees "the initial allocation of the franchise—that is, the right to vote," *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015), and the Fifteenth Amendment includes "protections of the right to vote," *United States v. Roof*, 10 F.4th 314, 394 (4th Cir. 2021). Section 2 of the Fourteenth Amendment, however, "expressly empowers the states to abridge a convicted felon's right to vote." *Hand*, 888 F.3d at 1209. That section imposes sanctions on States for denying "the right to vote" *except* "for participation in rebellion, or other crime." U.S. Const. amend. XIV, § 2.

Therefore, in *Richardson*, the Supreme Court held that the Fourteenth Amendment permits "disenfranchisement grounded on prior conviction of a felony." 418 U.S. at 43; see *id.* at 43–52. *Richardson* held that "the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment." *Id.* at 54. For that reason, unlike "other state limitations on the franchise which have been held invalid under the Equal Protection Clause," the Supreme Court recognized "the constitutionality of provisions disenfranchising felons." *Id.* at 53. Under this precedent, the Fourth Circuit has rejected a constitutional challenge to Virginia's disenfranchisement of convicted felons, holding that "the Fourteenth Amendment itself permits the denial of the franchise upon criminal conviction." *Howard v. Gilmore*, 205 F.3d 1333 (Table), 2000 WL 203984, at *1 (4th Cir. Feb. 23, 2000) (citing *Richardson*, 418 U.S. at 54).

Because they may lawfully prohibit all felons from voting, States have no constitutional obligation to provide any process for the re-enfranchisement of felons, much less any particular process on any particular timeline. The Supreme Court has held that a State does not violate the Fourteenth Amendment "in denying a petitioner's application for pardon and reenfranchisement,

even though the Governor and selected cabinet officers did so in the absence of any articulable or detailed standards." *Hand*, 888 F.3d at 1208 (citing *Beacham v. Braterman*, 396 U.S. 12 (1969)). In *Beacham*, a convicted felon challenged a state governor's refusal to grant him a pardon and the concomitant restoration of his civil rights, including the right to register to vote. *Beacham v. Braterman*, 300 F. Supp. 182, 182–83 (S.D. Fla. 1969). A three-judge district court squarely rejected the claim, holding that the discretionary pardon power, which included the restoration of civil rights, "has long been recognized as the peculiar right of the executive branch of government," and that the exercise of that executive power was free from judicial control. *Id.* at 184. The Supreme Court affirmed the holding of the three-judge district court in a summary decision. 396 U.S. 12. *Beacham* thus "establishes the broad discretion of the executive to carry out a standardless clemency regime" as to the re-enfranchisement of felons. *Hand*, 888 F.3d at 1208.[2]

Plaintiffs' claims fail under these precedents. Plaintiffs contend that Virginia's "voting rights restoration scheme for people with felony convictions," Compl. ¶ 5, is unconstitutional because it allows the Governor "unfettered discretion" in considering re-enfranchisement applications and lacks "reasonable, definite time limits for decisions on" the applications, *id.* ¶¶ 47–66. But re-enfranchisement of felons is part of the Governor's clemency powers, and the Constitution allows for "the broad discretion of the executive to carry out a standardless clemency regime." *Hand*, 888 F.3d at 1208.

---

[2] Supreme Court summary dispositions are binding precedents on the lower courts. See *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (such dispositions "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions"). In addition, the Supreme Court has subsequently cited *Beacham* approvingly. See *Richardson*, 418 U.S. at 53 ("[W]e have summarily affirmed two decisions of three-judge District Courts rejecting constitutional challenges to state laws disenfranchising convicted felons." (citing *Beacham*, 396 U.S. 12, and *Fincher v. Scott*, 411 U.S. 961 (1973))).

Indeed, discretionary pardon and clemency powers, including Virginia's re-enfranchisement process, typically lie beyond the purview of judicial review. For instance, in *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458 (1981), an inmate sued the state board of pardons, alleging that its failure to explain why it had denied his commutation request violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 460–61. The Supreme Court rejected this argument, holding that "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Id.* at 464. Clemency is not a right but "simply a unilateral hope" that "generally depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision." *Id.* at 464, 465. The Supreme Court reached a similar conclusion decades later in *Ohio Adult Parole Authority v. Woodard*. 523 U.S. 272 (1998). See *id.* at 280–81 (plurality op.) ("[T]he heart of executive clemency, which is to grant clemency as a matter of grace, . . . allow[s] the executive to consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations.").

Nor does the Constitution require the executive to make decisions on re-enfranchisement applications under any set timeline. A convicted felon who has lost his right to vote has no constitutional right to a clemency decision from the Governor within a defined period of time. "[O]nce a felon is properly disenfranchised a state is at liberty to keep him in that status *indefinitely* and *never revisit* that determination." *Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010) (O'Connor, J.) (citing *Richardson*, 418 U.S. at 26–27) (emphasis added). Because the Fourteenth Amendment expressly authorizes a State to disenfranchise convicted felons permanently and indefinitely, the Governor may consider clemency applications for re-enfranchisement without set time limits. See, *e.g.*, *Hand*, 888 F.3d at 1211–13.

17

### B.  The First Amendment does not guarantee felons the right to vote

Plaintiffs try to avoid the clear import of this precedent by casting their re-enfranchisement claims solely under the First Amendment. But this tactic lacks merit, and courts have uniformly rejected it. *E.g.*, *Hand*, 888 F.3d at 1212; *Kronlund v. Honstein*, 327 F. Supp. 71, 73 (N.D. Ga. 1971); *Farrakhan v. Locke*, 987 F. Supp. 1304, 1314 (E.D. Wash. 1997); *Johnson v. Bush*, 214 F. Supp. 2d 1333, 1338 (S.D. Fla. 2002), *aff'd sub nom. Johnson v. Governor of Fla.*, 405 F.3d 1214 (11th Cir. 2005) (en banc); *Hayden v. Pataki*, No. 00 Civ. 8586(LMM), 2004 WL 1335921, at *6 (S.D.N.Y. June 14, 2004); *Howard*, 2000 WL 203984, at *1; *Lostutter v. Beshear*, No. 6:18-277-KKC, 2022 WL 2912466 (E.D. Ky. July 22, 2022), *appeal filed* 2022 WL 2912466 (6th Cir. Aug. 12, 2022).

Plaintiffs' First Amendment claim would require the Court "to conclude that the same Constitution that recognizes felon disenfranchisement under § 2 of the Fourteenth Amendment also prohibits disenfranchisement under other amendments." *Farrakhan*, 987 F. Supp. at 1314. Indeed, it would not require interpreting merely the "same Constitution" to both permit and prohibit felon disenfranchisement. It would require interpreting *the same amendment* to both permit and prohibit felon disenfranchisement, because the freedom of speech secured against congressional abridgment by the First Amendment is safeguarded against *state* abridgement only by Section 1 of the Fourteenth Amendment—Section 2 of which expressly authorizes felon disenfranchisement. See *Grosjean v. American Press Co.*, 297 U.S. 233, 243 (1936) ("While [the First Amendment] is not a restraint upon the powers of the states, the states are precluded from abridging the freedom of speech or of the press by force of the due process clause of the Fourteenth Amendment."). The Court should not "interpret the Constitution in this internally inconsistent manner or . . . determine that the Supreme Court's declaration of the facial validity of felon disenfranchisement laws in *Richardson v. Ramirez* was based only on the fortuity that the plaintiffs

18

therein did not make their arguments under different sections of the Constitution." *Farrakhan*, 987 F. Supp. at 1314. To the contrary, the Supreme Court "ha[s] strongly suggested in dicta that exclusion of convicted felons from the franchise violates *no constitutional provision.*" *Richardson*, 418 U.S. at 53 (emphasis added); see also *Fusaro v. Cogan*, 930 F.3d 241, 254–55 (4th Cir. 2019) (holding that lower courts are "obliged to afford great weight to Supreme Court dicta," particularly when those dicta were endorsed by a majority of Justices) (quotation marks omitted)).

Further, the Fourth Circuit has held that the First Amendment "offers no protection of voting rights beyond that afforded by the fourteenth or fifteenth amendments." *Washington*, 664 F.2d at 928 (4th Cir. 1981); see also *Republican Party of N.C. v. Martin*, 980 F.2d 943, 959 n.28 (4th Cir. 1992) ("This court has held that in voting rights cases, no viable First Amendment claim exists in the absence of a Fourteenth Amendment claim."). This is especially so in a felon re-enfranchisement case. As the Fourth Circuit has explained, "[t]he First Amendment creates no private right of action for seeking reinstatement of previously canceled voting rights." *Howard*, 2000 WL 203984, at *1. Rather, "the specific language of the Fourteenth Amendment controls over the First Amendment's more general terms." *Hand*, 888 F.3d at 1212; see also *City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (a general constitutional provision applies only if the matter presented is not "covered by" a more specific provision). For that reason, "every First Amendment challenge to a discretionary vote-restoration regime" has been "summarily rebuffed." *Hand*, 888 F.3d at 1212 (collecting cases). The "case law is clear that the First Amendment does not guarantee felons the right to vote." *Hayden*, 2004 WL 1335921, at *6.

Against this heavy weight of authority, Plaintiffs do not cite a single case holding that a felon re-enfranchisement process implicates, much less violates, the First Amendment. Instead, the First Amendment cases Plaintiffs cite, see, *e.g.*, Compl. ¶¶ 50, 60, are "inapposite to a

reenfranchisement case," *Hand*, 888 F.3d at 1212. Those cases "established the longstanding and important but (for our purposes) unremarkable point that a state cannot vest officials with unlimited discretion to grant or deny licenses as a condition of engaging in protected First Amendment activity." *Id.* at 1212–13; see, *e.g.*, Compl. ¶ 50 (collecting cases for the proposition that the "First Amendment forbids vesting government officials with unfettered discretion to issue or deny licenses or permits to engage in any First Amendment-protected speech, expressive conduct, association or any other protected activity or conduct" (quoting *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123 (1992), and *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988))); see also *Hand*, 888 F.3d at 1213 (distinguishing *Forsyth County* and *City of Lakewood*). But the key to those cases is that the unlimited discretion stands between the citizen and the exercise of an undoubted constitutional right to engage in "protected First Amendment activity." Here, by contrast, the "activity" in which Plaintiffs wish to engage—voting as convicted felons—is not protected by the Constitution at all. This precedent therefore "does not bear directly on the matters presented by this case," because "none of the cited cases involved voting rights," much less re-enfranchisement of felons. *Hand*, 888 F.3d at 1213.

Instead, Plaintiffs rely on inapposite cases involving widely different activities. See Compl. ¶ 59. The Supreme Court has interpreted the First Amendment as placing certain time limits on administrative licensing or permitting decisions *only* in the context of constitutionally protected speech or expressive conduct. For example, Plaintiffs rely on *FW/PBS, Inc. v. City of Dallas*, but that case involved a city's "ordinance regulat[ing] sexually oriented businesses through a scheme incorporating zoning, licensing, and inspections." 493 U.S. 215, 220–21 (1990). The activity in which the businesses in *FW/PBS* wished to engage—"purveying sexually explicit speech"—was concededly protected by the First Amendment. *Id.* at 224; see also *id.* at 228 (noting that "the

license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech"). The activity in which Plaintiffs wish to engage in this case—voting as convicted felons—is not. Plaintiffs also cite *Riley v. National Federation of the Blind of North Carolina, Inc.*, in which the Supreme Court invalidated a state law in part due to "a delay without limit" in granting a license for engaging in protected speech through solicitations. 487 U.S. 781, 802 (1988). Because the First Amendment does not provide felons a right to vote, however, the First Amendment's restrictions on time limits or discretion in licensing and permitting schemes simply do not apply to the Governor's felon re-enfranchisement process.

Plaintiffs assert that the First Amendment "protects the right to vote because voting is both political association and political expression or expressive conduct." Compl. ¶¶ 49, 59. This argument is erroneous. The First Amendment of course protects political speech and association related to elections. The First Amendment, for instance, "protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). And "[b]ecause our democracy relies on free debate as the vehicle of dispute and the engine of electoral change, political speech occupies a distinctive place in First Amendment law." *Washington Post v. McManus*, 944 F.3d 506, 513 (4th Cir. 2019); see also *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 186–87 (1999) (First Amendment protection is "at its zenith" for "core political speech" involving elections). But where the right to vote itself is concerned, the Fourteenth and Fifteenth Amendments govern. See p.19, *supra*. Voting is political action. Indeed, Plaintiffs cite no case holding that the franchise itself is a First Amendment right at all. At any rate, the Fourth Circuit has held that any First Amendment protections of the right to vote do not "extend beyond those

more directly, and perhaps only, provided by the fourteenth and fifteenth amendments." *Finlay*, 664 F.2d at 927. Plaintiffs' claims fail on that ground.

Plaintiffs' cherry-picked quotations from Supreme Court precedent do not demonstrate otherwise. Most of the cases they cite involve the speech and association rights of parties and candidates, and do not involve voting rights at all. For instance, *Norman v. Reed*, 502 U.S. 279 (1992), and *Williams v. Rhodes*, 393 U.S. 23 (1968), concerned the rights of political parties and not the right to cast a ballot. *Anderson v. Celebrezze*, 460 U.S. 780 (1983), involved the rights of independent candidates to appear on a general-election ballot, not the right of any voter to cast a ballot. And *Kusper v. Pontikes* involved the "right to associate with the political party of one's choice," considering a law that restricted a "voter's freedom to change his political party affiliation" in registering for primary elections. 414 U.S. 51, 57 (1973). That Plaintiffs could not marshal a single apposite case places in stark relief the fundamental flaw of their claim.

That is not to say that a discretionary re-enfranchisement regime could *never* violate the Constitution. The Governor is subject to the same federal constitutional constraints on the exercise of his clemency power as he is in the exercise of other powers. As the Fourth Circuit has noted, a "decision to disenfranchise felons [that] was motivated by race" would give rise to "claims under the Fourteenth and Fifteenth Amendments." *Howard*, 2000 WL 203984, at *1. And "a discretionary felon-reenfranchisement scheme that was facially or intentionally designed to discriminate based on viewpoint—say, for example, by barring Democrats, Republicans, or socialists from reenfranchisement on account of their political affiliation—might violate the First Amendment." *Hand*, 888 F.3d at 1211–12. But those hypothetical schemes would not run afoul of the proposed right of felons to vote that Plaintiffs press here. Instead, they would violate other federal constitutional constraints on the exercise of all government power, like the Equal

Protection Clause's prohibition on racial discrimination. Plaintiffs here, however, have not alleged such invidious purpose. They merely allege without any elaboration a "*risk* of arbitrary delays, biased treatment, and viewpoint discrimination." Compl. ¶ 63 (emphasis added); see also *id.* ¶ 64 ("making the system susceptible to arbitrary, biased, and/or discriminatory treatment"). But "even if the First Amendment could be employed in this case in lieu of the Fourteenth—and that is not an easy argument to sustain in the face of controlling case law—something more than risk would likely have to be shown." *Hand*, 888 F.3d at 1212. Plaintiffs do not allege facts demonstrating any actual invidious discrimination, and their claims fail.

## CONCLUSION

The Court should dismiss this lawsuit for want of jurisdiction; Plaintiffs lack standing and Gregory Williams' claims are unripe. The Court should also dismiss this lawsuit on the merits because the Governor's re-enfranchisement policy does not violate the First Amendment.

Dated: June 16, 2023

Respectfully submitted,

GLENN YOUNGKIN
KAY COLES JAMES

By:   */s/ Andrew N. Ferguson*
       Andrew N. Ferguson (VSB #86583)
        *Solicitor General*

Jason S. Miyares
   *Attorney General*

Steven G. Popps (VSB #80817)
   *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
AFerguson@oag.state.va.us

       Erika L. Maley (VSB #97533)
        *Principal Deputy Solicitor General*

       Kevin M. Gallagher (VSB #87548)
        *Deputy Solicitor General*

       Travis S. Andrews (VSB #90520)
        *Assistant Attorney General*

       *Counsel for Defendants Glenn Youngkin and Kay Coles James*

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on June 16, 2023, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all parties of record.


_/s/ Andrew N. Ferguson_
Andrew N. Ferguson (VSB #86583)
_Solicitor General_