**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| GEORGE HAWKINS )<br><br>       Plaintiff, )<br><br>v. )<br><br>      )<br>GLENN YOUNGKIN, in this official )<br>capacity as Governor of Virginia, and )<br>KELLY GEE, in her official capacity )<br>as Secretary of the Commonwealth )<br>of Virginia )<br>      )<br>      Defendants. )<br>      ) | Civil Action No. 3:23-cv-00232 |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.     INTRODUCTION ....................................................................................................... 1

II.   LEGAL BACKGROUND ON FELONY DISENFRANCHISEMENT AND
REENFRANCHISEMENT IN VIRGINIA ........................................................... 4

III. UNDISPUTED MATERIAL FACTS ....................................................................... 5

     A.    Material Facts from Joint Stipulation of Undisputed Facts ........................ 5

     B.    Undisputed Material Facts Relating to Plaintiff George Hawkins ............. 5

     C.    Undisputed Material Facts Relating to Virginia's Restoration of Voting Rights
Process. ................................................................................................... 7

     D.    Undisputed Material Facts Regarding Rights Restoration Applications Submitted
from May 17, 2022 to January 22, 2024 .................................................. 8

     E.    Undisputed Material Facts Regarding Length of Time that Restoration of Rights
Applications Remained Pending During the Relevant Time Period ........ 14

IV. ARGUMENT ......................................................................................................... 16

     A.    The evidence establishes that plaintiff has standing to bring these First Amendment
claims. .................................................................................................... 16

     B.    Plaintiff has established a violation of the First Amendment unfettered discretion
doctrine as a matter of law ..................................................................... 19

V.   CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Andersen v. Celebrezze*,  460 U.S. 780 (1983) ................................................................20

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) ..........................16, 19, 23

*City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774 (2004) ......................................27

*Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458 (1981) ...............................22

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ...................................19

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) .................................................27

*Hunter v. Underwood*, 471 U.S. 222 (1985) ..............................................................18

*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979) ......................20

*In re Phillips*, 265 Va. 81 (2003) ..............................................................................4

*Lovell v. City of Griffin*, 303 U.S. 444 (1938) .............................................................2

*Norman v. Reed*, 502 U.S. 279 (1992) .......................................................................20

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) .........................18

*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988) .............27

*Roach v. Stouffer*, 560 F.3d 860 (8th Cir. 2009) ........................................................18

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) .....................................22, 23

## Constitutional Provisions

Va. Const. art. 5, § 12 ...............................................................................................4

Va. Const. art. II, § 1 ...............................................................................................4

## Statutes

Virginia Code Ann. § 24.2-101 ...................................................................................4

Virginia Code Ann. § 24.2-1016 .................................................................................4

Virginia Code Ann. § 24.2-427(D)..................................................................................................4

Virginia Code Ann. § 53.1-231.1 ..................................................................................................5

## I.   INTRODUCTION

Plaintiff George Barry Hawkins, Jr. ("Plaintiff" or "Mr. Hawkins") seeks to end the arbitrary restoration of voting rights to Virginians with felony convictions. Plaintiff has asserted two First Amendment claims, challenging both the lack of objective rules and criteria governing Defendants Governor Glenn Youngkin and Secretary of the Commonwealth Kelly Gee's ("Defendants") voting rights restoration system and the lack of reasonable, definite time limits by which the Governor must grant or deny a restoration application. Because Virginia law has created a path to restoration—an exception to the default rule of disenfranchisement upon felony conviction—a government official may not arbitrarily administer that exception by selectively conferring voting rights on the disenfranchised on a case-by-case basis. The First Amendment forbids this de facto licensing scheme.

The U.S. Supreme Court has long construed the First Amendment to prohibit such limitless discretion in licensing protected expressive conduct because it creates the risk of undetectable viewpoint discrimination. The Court has been clear that the unfettered discretion doctrine does not require evidence of particular instances of viewpoint discrimination. Rather, this preventative rule prohibits the very grant of arbitrary power which enables such discrimination. Accordingly, in a facial challenge to an arbitrary licensing scheme governing the exercise of First Amendment-protected conduct such as Count One, a plaintiff need only demonstrate the absence of any objective rules or criteria that constrain official discretion. Without such rules or criteria, any licensing process is susceptible to biased treatment of applicants and, therefore, unconstitutional. Applicants can signal their viewpoints and party preferences to the licensor, or the licensor can access or receive information on the same through readily available sources like political donation or voter registration history and social media accounts. Because Virginia law assigns sole power

over restoration to one government official's unfettered discretion, there is no way to detect and redress viewpoint discrimination.

The evidence in this case demonstrates the wisdom of the Supreme Court's 85-year-old doctrine. *Lovell v. City of Griffin*, 303 U.S. 444 (1938). Defendants have admitted that—aside from constitutional prohibitions on intentional discrimination based on "suspect classifications or the exercise of fundamental rights" and the inability to grant voting rights to an individual who fails to satisfy the other voting eligibility criteria such as U.S. citizenship—"Virginia law does not otherwise constrain or limit the Governor's individualized discretion when deciding whether to grant a citizen's voting-restoration application."[1] Similarly, the Governor has admitted that "there are no rules, criteria, factors, or standards that constrain or otherwise limit, as a matter of law, the Governor's discretion to grant, deny, or take any other action on citizens' voting rights restoration applications."[2] Finally, Governor Youngkin has further admitted that he grants or denies restoration based on his "predictive determination that an individual will live as a responsible citizen . . ."[3] These admissions alone are dispositive of Count One: Defendants' "responsible citizen" test for restoration is unlawfully arbitrary and subjective.

Additional evidence corroborates this conclusion and demonstrates that Virginia's arbitrary restoration scheme is haphazard and fails to preclude the exercise of discretion in a biased manner. Even a limited sample of communications to and from Defendants on rights restoration demonstrates that applicants and their supporters can signal viewpoints or partisan affiliations.

---

[1] Declaration of Jonathan Sherman ("Sherman Decl.") ¶ 3, Ex. B (Gov. Youngkin's Responses to Plaintiff's Second Set of Interrogatories) at Response to Interrog. No. 1, at 2.

[2] *Id.* at Response to Interrog. No. 3, at 4.

[3] Sherman Decl. ¶ 2, Ex. A (Gov. Youngkin's Responses to Plaintiffs' First Set of Requests for Admission and Interrogatories) at Response to Interrog. No. 2, at 3.

State Senator Bill DeSteph, a Republican recently appointed by Governor Youngkin to the Atlantic States Marine Fisheries Commission, wrote two letters to the Rights Restoration Division expressing his support for restoring the voting rights of ██████████ and ██████████████.[4] Governor Youngkin restored the voting rights of both applicants.[5] It is unknown whether these restoration applicants' or the State Senator's partisan affiliation played a role in the decisions to grant restoration. Signaling that an applicant shares the political viewpoints or partisan affiliations of *any* governor of *any* political party can be implicit and leave no trace. This signaling can also be more explicit. In a November 8, 2022 email received by the Secretary of the Commonwealth's office, a prospective restoration applicant, ██████████████, announces that he is "a life-long Republican voter who was recently released from incarceration" and asks for assistance and "expedited review."[6] Regardless of the disposition of any particular application, because nothing in Virginia law *prevents* Governor Youngkin from issuing—or withholding—these licenses to vote based on an applicant's viewpoints or partisan affiliation, Defendants' restoration system violates the First Amendment.

With respect to Count Two, Defendants have also admitted that there are no reasonable, definite time limits by which Governor Youngkin must grant or deny a voting rights restoration application. This too violates the First Amendment.

---

[4] Sherman Decl. ¶ 4, Ex. C; *see also* ECF Nos. 49-50 (Motion for Judicial Notice and Memorandum in Support); ECF No. 50-6 at 3 (Press Release, "Governor Glenn Youngkin Announces Additional Administration and Board Appointments" (Oct. 13, 2023), *also available at* https://www.governor.virginia.gov/newsroom/news-releases/2023/october/name-1015925-en.html).

[5] *See id.* at ECF No. 50-4 at 42, 48 ("The Office of the Governor's List of Pardons, Commutations, Reprieves and Other Forms of Clemency to the General Assembly of Virginia, Senate Document No. 2" (Jan. 15, 2023), *also available at* https://rga.lis.virginia.gov/Published/2023/SD2/PDF).

[6] Sherman Decl. ¶ 5, Ex. D.

## II.    LEGAL BACKGROUND ON FELONY DISENFRANCHISEMENT AND REENFRANCHISEMENT IN VIRGINIA

The Virginia Constitution sets forth the rules for voting eligibility and also includes a felony disenfranchisement provision: "No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." VA. CONST. art. II, § 1. Article 5, Section 12 of the Virginia Constitution also states that "[t]he Governor shall have power . . . to remove political disabilities consequent upon conviction for offenses committed prior or subsequent to the adoption of this Constitution . . ." VA. CONST. art. 5, § 12. People with felony convictions may not register to vote prior to the restoration of their voting rights by the Governor. If an individual with a felony conviction willfully registers to vote without restoration, they commit a Class 5 felony. Va. Code Ann. § 24.2-1016.

Felony disenfranchisement and re-enfranchisement are also incorporated within Virginia's statutes. Just after the enumerated eligibility criteria in the definition of a "qualified voter," Virginia law states that: "No person who has been convicted of a felony shall be a qualified voter unless his civil rights have been restored by the Governor or other appropriate authority." Va. Code Ann. § 24.2-101; *see also* Va. Code Ann. § 24.2-427(D) (requiring cancellation of "registration of any registered voter shown to have been convicted of a felony who has not provided evidence that his right to vote has been restored").

It is uncontested that Virginia law does not establish any rules or criteria to govern the Governor's decision-making on voting rights restoration applications. In fact, the Supreme Court of Virginia has noted that the Governor's powers of restoration are exclusive and unfettered: "[T]he power to remove the felon's political disabilities remains vested solely in the Governor, who may grant or deny any request *without explanation*, and there is no right of appeal from the Governor's decision." *In re Phillips*, 265 Va. 81, 87–88 (2003) (emphasis added).

4

The Director of the Department of Corrections is required to notify anyone convicted of a felony of the loss of their voting rights and of the procedures for applying for restoration. Va. Code Ann. § 53.1-231.1. "The notice shall be given at the time the person has completed service of his sentence, period of probation or parole, or suspension of sentence." *Id*. The Director of the Department of Corrections is required to assist the Secretary of the Commonwealth in administering the restoration application review process. *Id*. The Secretary of the Commonwealth is instructed by statute to "maintain a record of the applications for restoration of rights received, the dates such applications are received, and the dates they are either granted or denied by the Governor" and to "notify each applicant who has filed a complete application that the complete application has been received and the date the complete application was forwarded by the Secretary to the Governor." *Id*. Virginia law requires that complete applications be forwarded to the Governor within ninety days of receipt. *Id*.

### III. UNDISPUTED MATERIAL FACTS

#### A. Material Facts from Joint Stipulation of Undisputed Facts

Plaintiff incorporates by reference and relies upon the following undisputed material facts from the Joint Stipulation of Undisputed Facts ("JSUF"): Nos. 1 through 6, 10 through 28, 30 through 49.

#### B. Undisputed Material Facts Relating to Plaintiff George Hawkins

1. Plaintiff George Hawkins was born on March 11, 1992, and is currently 31 years old. Mr. Hawkins is a United States citizen and a resident of Richmond, Virginia. Mr. Hawkins has never been declared mentally incapacitated by any court. Declaration of George Barry Hawkins, Jr. ("Hawkins Decl.") ¶ 1.

2. In 2010, Mr. Hawkins was convicted of a felony in a Commonwealth of Virginia court when he was 17 years old. *Id*. ¶ 2.

3.      On May 3, 2023, Mr. Hawkins completed his term of incarceration for a felony conviction. *Id*.

4.      Because Mr. Hawkins was convicted as a juvenile, he has never been eligible to vote in his life, and he has never voted. *Id*. ¶ 3.

5.      Mr. Hawkins wants to register to vote in future primary and general elections in the Commonwealth of Virginia for candidates of his choice and state constitutional amendments, to express his political preferences, and to support and associate with political parties in order to advance their goals. *Id*. ¶ 4.

6.      Last year, Mr. Hawkins applied for voting rights restoration twice. The first time he applied was in early May 2023. His first rights restoration application was denied by Governor Glenn Youngkin. *Id*. ¶ 5.

7.      On or around June 18, 2023, Mr. Hawkins submitted a second application for the restoration of his voting rights. *Id*. ¶ 6; *see also* Sherman Decl. ¶ 6, Ex. E (portions of Defendants' internal database).

8.      In July 2023, the rights restoration online portal showed that his application was "pending." Hawkins Decl. ¶ 6, Ex. A.

9.      Sometime after July 2023, Mr. Hawkins' status changed. The portal showed that he was "ineligible at this time" and the "date closed" for his application was August 17, 2023. *Id*. ¶ 6, Ex. B.

10.     Mr. Hawkins was not told why his application was deemed "ineligible at this time," when his application may be deemed eligible, or what conditions he must satisfy in order for his application to be deemed eligible. Hawkins Decl. ¶ 6.

**C.    Undisputed Material Facts Relating to Virginia's Restoration of Voting Rights Process.**

11.    The only information on eligibility for voting rights restoration that is contained in any public-facing material or source, including the Secretary of the Commonwealth's rights restoration website, is what is contained in the JSUF Paragraph 11.

12.    "Completeness" and "eligibility" for voting rights restoration applications are not defined or otherwise specified in any public-facing materials or websites. *See also* Sherman Decl. ¶¶ 9, Ex. H; *see also* ECF Nos. 49-50 (Motion for Judicial Notice and Memorandum in Support); ECF Nos. 50-1 (ROR homepage),[7] 50-2 (ROR "Frequently Asked Questions" webpage),[8] and 50-3 (ROR "Process" webpage).[9]

13.    

14.    There is no deadline in Virginia law or administrative rules by which state agencies must respond with information on a rights restoration applicant.

---

[7] *Also available at:* https://www.restore.virginia.gov/restoration-of-rights-process/.
[8] *Also available at:* https://www.restore.virginia.gov/frequently-asked-questions/ (In response to the FAQ "Am I eligible to have my rights restored?", the answer is "Governor Youngkin will consider restoration of rights for any individuals that have finished any term of incarceration as a result of a felony conviction.")
[9] *Also available at:* https://www.restore.virginia.gov/restoration-of-rights-process/ ("An individual is eligible to apply to have his/her rights restored by the Governor if he/she has been convicted of a felony and is no longer incarcerated.").
[10] ████████████████████████████████████████████

**D.    Undisputed Material Facts Regarding Rights Restoration Applications Submitted from May 17, 2022 to January 22, 2024[11]**

15.    Apart from federal and state constitutional constraints, "there are no rules, criteria, factors, or standards that constrain or otherwise limit, as a matter of law, the Governor's discretion to grant, deny, or take any other action on citizens' voting rights restoration applications." Sherman Decl. ¶ 3, Ex. B at Response to Interrog. No. 3, at 4.

16.    



18.

19.

20.

21.

---

[15] *See* JSUF ¶ 37 (confirming column titled "Claims to Have Finished Sentence" corresponds to the restoration application question of "have you completed serving all terms of incarceration?").

[16]

[17]

[18]



22.

23.

24.

_____

19

*see also* JSUF ¶ 38 (confirming that Column S titled "Claims Currently on Probation" reflects responses to the application question of "are you currently on probation, parole or other state supervision?").

20

21



25. ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

26. ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████

27. ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████





28.

29.

30.





31.

32.

33.

34.

35.



36.



37.

### E. Undisputed Material Facts Regarding Length of Time that Restoration of Rights Applications Remained Pending During the Relevant Time Period

38.    In response to the Frequently Asked Question "How long does it take to get my rights restored?", the Secretary of the Commonwealth's official rights restoration website answers: "The review process usually takes 1-3 months after an individual has contacted the office requesting restoration of rights." *See* ECF Nos. 49-50, Motion for Judicial Notice and Memorandum; ECF No. 50-2, at 1, *also available at* https://www.restore.virginia.gov/frequently-asked-questions/.

39.    Restoration of Rights Office staff have informed applicants via email that their office has been "experiencing an extended timeline under [the Youngkin] administration." Sherman Decl. ¶ 7, Ex. F at Hawkins_Def_001682.

40.



---

34
35



41.

42.

43.

44.

45.

---

[36]

46. ███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

## IV.   ARGUMENT

**A.   The evidence establishes that plaintiff has standing to bring these First Amendment claims.**

Mr. Hawkins has standing to pursue his First Amendment claims against Defendants' arbitrary voting rights restoration scheme. The denial of a plaintiff's application for a license or permit is not a prerequisite to asserting a *facial* unfettered discretion challenge under the First Amendment. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56 (1988) (collecting cases) ("[O]ur cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."). A license application's denial is also obviously not a prerequisite to filing suit under the corollary First Amendment precedents requiring reasonable, definite time limits in licensing. The purpose of that related doctrine—to eliminate the risk of discriminatory or biased delays—would be defeated with a contrary rule.

Nevertheless, Mr. Hawkins did submit two voting rights restoration applications last year, and both were denied. Hawkins Decl. ¶¶ 5-6. Mr. Hawkins' second application was deemed "ineligible at this time" and administratively closed last August. *Id.* ¶ 6. The online rights restoration portal maintained by the Secretary of the Commonwealth's office informed him of this outcome but did not explain why he was "ineligible" for restoration, what conditions he would need to satisfy to become eligible for restoration, and when, if ever, he would become eligible. *Id.*

The disposition of Mr. Hawkins' application is mysterious because according to Defendants' alleged internal policy on restoration eligibility, he is eligible for the Governor's consideration: Mr. Hawkins is not "a person who is still incarcerated, a person who is currently subject to a pending felony charge, a person who is under supervised release for an out-of-state or federal conviction, or a person who does not satisfy the voting qualifications set forth by Virginia law, such as age, citizenship status, and residency requirements." *See* JSUF ¶ 28. Nor have Defendants asserted that he submitted an incomplete application, *id*., which would presumably merit the "incomplete" status code, not "ineligible at this time." Mr. Hawkins' denial for unexplained "ineligibility" is emblematic of the arbitrary and haphazard nature of Defendants' restoration process. Indeed, this eligibility policy is not even publicly communicated. *See* Undisputed Material Facts ¶¶ 11-12 (Official Restoration of Rights division webpages stating only eligibility criterion is release from incarceration).

Plaintiff remains subject to an arbitrary vote-licensing scheme without any substantive rules or criteria or any reasonable definite time limits on the licensor's decision-making.[37] Since an ineligibility determination is tantamount to a denial, Mr. Hawkins would need to re-apply to

---

[37] Mr. Hawkins is not alone. Time and time again, applicants in limbo have contacted the Governor's Office and/or the Restoration of Rights Office, desperately seeking information on the status of their delayed rights restoration applications. *See* Sherman Decl. ¶ 7, Ex. F at Hawkins_Def_001663 (applicant requesting information on application pending for seven months); *id*. at Hawkins_Def_001676 (applicant requesting information on application pending for "a couple months"); *id*. at Hawkins_Def_001680 (applicant requesting information on application "pending for forever"); *id*. at Hawkins_Def_001681 (requesting information on application pending for ten months); *id*. at Hawkins_Def_001686 (applicant requesting information on application pending for three months); *id*. at Hawkins_Def_001687 (applicant requesting information on application pending for "a few months"); *id*. at Hawkins_Def_001699 (applicant requesting information on application pending for nine months); *id*. at Hawkins_Def_001700 (applicant requesting information on application pending for approximately nine months).

secure restoration under Defendants' current system. JSUF ¶¶ 31-32, 34. Accordingly, this establishes his standing to bring Counts One and Two under these related First Amendment doctrines. Because Mr. Hawkins has asserted facial challenges, he suffers a cognizable constitutional injury from the arbitrariness of the state's voting rights restoration system. Whether or not Plaintiff's requested injunctive relief to create a non-arbitrary system ultimately would result in his personal re-enfranchisement is irrelevant. Furthermore, the existence of an actual, improper discriminatory or biased motive need not be shown to strike down such a law on its face. *See, e.g.*, *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007) ("[A] licensing provision coupled with unbridled discretion itself amounts to an actual injury.") (citations omitted); *Roach v. Stouffer*, 560 F.3d 860, 869 & n.5 (8th Cir. 2009) (holding pro-life group "need not prove, or even allege" viewpoint discrimination in successful facial First Amendment challenge to officials' "unbridled discretion" in specialty license plate program). Regardless of whether or how often it is exercised, and regardless of the disposition of any particular license application, such unfettered discretion is per se unlawful in the First Amendment context.

Lastly, Defendants have already conceded that disenfranchised individuals can suffer *federal* constitutional injuries even though they are presently ineligible to vote under *state* law. They have previously pointed to racial discrimination under the Fourteenth and Fifteenth Amendments and "facial[] or intentional[]" political viewpoint discrimination under the First Amendment as viable constitutional claims for disenfranchised people with felony convictions to assert. ECF No. 27, Defs.' Mem. in Supp. of Mot. to Dismiss, at 33; *see Hunter v. Underwood*, 471 U.S. 222, 231–33 (1985) (striking down Alabama's felony disenfranchisement regime as racially discriminatory).

**B.     Plaintiff has established a violation of the First Amendment unfettered discretion doctrine as a matter of law.**

**1.     Lack of Objective Rules and Criteria (Count One)**

Plaintiff has asserted two claims under longstanding First Amendment doctrine. First, in Count One, Mr. Hawkins claims that Virginia's voting rights restoration system functions as a licensing system governing First Amendment-protected expressive conduct, triggering the operation of the unfettered discretion doctrine under *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), and related Supreme Court precedents. This preventative doctrine requires the invalidation of licensing schemes governing protected expressive conduct where officials have been vested with unfettered discretion to grant or deny the requested licenses. *City of Lakewood*, 486 U.S. at 757, 763–64.

Under such an arbitrary licensing system, the applicant is subjected to the risk of undetectable viewpoint or speaker-based discrimination and pressured into self-censorship so as not to jeopardize their application. *City of Lakewood*, 486 U.S. at 759, 762–63. The Supreme Court has also explained that in the absence of "standards to fetter the licensor's discretion," as-applied challenges are not viable, and the licensor's decisions are "effectively unreviewable." *Id*. at 758–59. "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Id*. at 759. Crucially, "[f]acial attacks on the discretion granted a decisionmaker are not dependent on the facts surrounding any particular permit decision." *Forsyth Cnty.*, 505 U.S. at 133 n.10. The existence of an actual, improper discriminatory or biased motive in granting or denying any particular application need not be demonstrated to strike down such laws on their face: "[T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the

administrator has exercised his discretion in a content-based manner, *but whether there is anything in the ordinance preventing him from doing so*." *Id*. (emphasis added).

This First Amendment doctrine applies to voting. The U.S. Supreme Court has long stated that when citizens express their political views and preferences at the ballot box, that vote, though secret, is nevertheless protected by the First Amendment as politically expressive conduct. *See Norman v. Reed*, 502 U.S. 279, 288 (1992) (recognizing "the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of *all voters to express their own political preferences*") (emphasis added); *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983) (evaluating burdens on "the voters' freedom of choice and freedom of association"); *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) (describing ballot access restrictions as "impair[ing] the voters' ability to express their political preferences"). The First Amendment protects voting as a form of expressive conduct, just as it protects expressions of support for candidates, parties, and causes, regardless of the format or medium.

This case implicates all the same concerns and principles that have animated the unfettered discretion doctrine since its inception 85 years ago. Disenfranchised individuals submit applications to regain their voting rights, and no rules or criteria govern Defendant Governor Youngkin's decision to grant or deny that application. As Governor Youngkin admitted in his responses to Plaintiff's interrogatories, aside from constitutional prohibitions on intentional discrimination based on "suspect classifications or the exercise of fundamental rights" and the inability to grant voting rights to an individual who fails to satisfy the other voting eligibility criteria such as U.S. citizenship, "Virginia law does not otherwise constrain or limit the Governor's individualized discretion when deciding whether to grant a citizen's voting-restoration

application." Sherman Decl. ¶ 3, Ex. B at Response to Interrog. No. 1, at 2. Similarly, the Governor

has admitted that "[a]part from the legal constraints imposed by Virginia law and federal law as

discussed in the Governor's responses to [the previous interrogatories], there are no rules, criteria,

factors, or standards that constrain or otherwise limit, as a matter of law, the Governor's discretion

to grant, deny, or take any other action on citizens' voting rights restoration applications." *Id*. at

Response to Interrog. No. 3, at 4.

Defendants have not argued or represented during discovery that there is any fixed,

objective list of rules or criteria that constrains, limits, or otherwise regulates the Governor's

discretion to grant or deny restoration applications. In one interrogatory response, Governor

Youngkin asserted that he "use[s] multiple factors to guide [his] discretion in ultimately making a

predictive determination that an individual will live as a responsible citizen and member of the

political body" and then enumerated all of the fields and/or questions on the current rights

restoration application. Sherman Decl. ¶ 2, Ex. A at Response to Interrog. No. 2, at 3; *see also*

JSUF ¶ 12 (listing information requested on rights restoration application). The Governor added

that "the factors do not serve as bright-line rules that automatically result in either a grant or denial

of a voting-restoration application" but instead "are part of Defendants' holistic process to make

[that] predictive judgment . . ." Sherman Decl. ¶ 2, Ex. A at Response to Interrog. No. 2, at 3. In

response to Plaintiff's subsequent interrogatories, Defendant Governor Youngkin emphasized that

these so-called "factors" do not operate like rules or criteria that control, constrain, or limit his

decision-making in any way:

> [T]he factors are not "rules," and thus do not impose any binding or otherwise
> enforceable legal constraint on the exercise of Defendants' discretion to restore a
> citizen's voting rights. Instead, the factors are considered as a matter of sound
> policy and merely help Defendants in their effort to make their ultimate "predictive
> judgment that an individual will live as a responsible citizen and member of the
> political body." Defendants have the *legal* authority to ignore these factors in any

particular case or to ignore them entirely. These factors do not "limit" or "constrain" the Governor's discretion in deciding whether to grant or deny any particular voting-restoration application. Thus, the ultimate decision determining the outcome of an individual's voting-restoration application—the predictive judgment regarding whether an applicant will live as a responsible citizen and member of the political body—is committed to the Governor's discretion and is not subject to any legal constraint apart from those outlined above.

Sherman Decl. ¶ 3, Ex. B at Response to Interrog. No. 1, at 2-3 (citations omitted, emphasis in original).

These admissions are dispositive of Count One: at its core, Defendants' restoration scheme is an arbitrary, subjective "responsible citizen" test. Far from denying the arbitrariness of the challenged system, Defendants have admitted to and embraced it by seeking to label voting rights restoration as clemency, which, as they have previously noted, is based "'on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision.'" ECF No. 27 (Defs.' Mem. in Supp. of Mot. to Dismiss) at 27 (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)).

But the "clemency" label is no shield against Plaintiff's First Amendment claims. Deciding whether to grant or deny licenses to engage in First Amendment-protected expressive conduct based on arbitrary and subjective standards like Governor Youngkin's "responsible citizen" test is exactly what the First Amendment unfettered discretion doctrine forbids. In *Shuttlesworth v. City of Birmingham*, the Supreme Court invalidated Birmingham's permit scheme for marches or demonstrations that lacked "narrow, objective, and definite standards" and was "guided only by [Commissioners'] own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'" 394 U.S. 147, 150–53 (1969). Similarly, Governor Youngkin's "responsible citizen" test must be invalidated. Instead of imposing *and adhering* to a list of objective rules and criteria, Defendants' restoration regime employs ever-changing, subjective, and vague standards.

In the words of former Secretary of the Commonwealth (and former Defendant) Kay Coles James, they were "practicing grace" and "ensuring public safety." *See* Sherman Decl. ¶ 11, Ex. J at 2. And as noted, subsequently, the Governor's responses to Plaintiff's interrogatories have conveyed that he now seeks to "mak[e] a predictive determination that an individual will live as a responsible citizen and member of the political body." Sherman Decl. ¶ 2, Ex. A at Response to Interrog. No. 2, at 3.

Conditioning a license to engage in protected expressive conduct based on such subjective guesswork about an applicant's future behavior is unconstitutionally arbitrary. Defendants' "responsible citizen" test is not the "narrow, objective, and definite standard" that *Shuttlesworth* and its progeny require. 394 U.S. at 151. Further, under Virginia's purely discretionary vote-licensing system, a governor may review any information on the applicant's political viewpoints, including previous voter registration and campaign donation history, as well as social media posts, and selectively grant or deny applicants based on their viewpoints or party affiliation without ever revealing these discriminatory motives. While ballots may be secret, the Governor "can measure their probable content or viewpoint by speech already uttered." *City of Lakewood*, 486 U.S. at 759.

The record evidence corroborates Defendants' admissions regarding the lack of any objective rules or criteria constraining Governor Youngkin's discretion to restore selectively. In response to Plaintiff's requests for production of documents, Defendants produced to Plaintiff the Secretary of the Commonwealth's rights restoration database entries for all rights restoration applications received on or after May 17, 2022. ███████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

[REDACTED]

The documents and data further confirm that, notwithstanding their representations, Defendants do not have a consistent eligibility policy for restoration of rights applicants and/or arbitrarily and unevenly administer their stated policy. Defendants' publicly communicated eligibility policy is simple: "An individual is eligible to apply to have his/her rights restored by the Governor if he/she has been convicted of a felony and is no longer incarcerated." *See* Undisputed

Material Facts ¶ 12 ("Restoration of Rights Process" webpage). In this action, Defendants have articulated a different (non-public) eligibility policy: "[A] voting rights restoration application is eligible for the Governor's consideration and ultimate decision to grant or deny it, unless the application was submitted by a person who is still incarcerated, a person who is currently subject to a pending felony charge, a person who is under supervised release for an out-of-state or federal conviction, or a person who does not satisfy the voting qualifications set forth by Virginia law, such as age, citizenship status, and residency requirements, or the application is incomplete." JSUF ¶ 28. In addition to the erroneous determination that Mr. Hawkins is ineligible under this stated policy, *see supra* at 16-17, ███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████

      ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ It is no surprise that applicants felt the process was not "fair or just." *See* Sherman Decl. ¶ 7, Ex. F at Hawkins_Def_001701; *see also id.* at Hawkins_Def_001661-1662 ("Further, I believe that I meet current requirements for restoration

of rights – and need to know who can I appeal this DECISION RENDERED TO QUALIFY ME INELIGIBLE FOR RESTORATION OF RIGHTS.") (emphasis original). This arbitrary administration of the policies that Defendants have represented they are using is further evidence of the system's unconstitutionality under the First Amendment.

Additional evidence demonstrates precisely why the First Amendment unfettered discretion doctrine was developed and must be enforced in this context. State Senator Bill DeSteph, a Republican recently appointed by Governor Glenn Youngkin to the Atlantic States Marine Fisheries Commission, wrote two letters expressing his support for restoring the voting rights of ███████ and ███████████. *See* Sherman Decl. ¶ 4, Ex. C. Governor Youngkin restored the voting rights of both applicants. *See supra* at 3. Similarly, former Virginia State Senator John A. Cosgrove—whom Governor Youngkin appointed last year as Deputy Commissioner on the Virginia Marine Resources Commission—wrote a letter on behalf of ████ ████████████████. Sherman Decl. ¶ 12, Ex. K. ███████████ application is still pending. *See* Sherman Decl. ¶ 6, Ex. E. Finally, in a November 8, 2022 email received by the Secretary of the Commonwealth's office, ████████████ announces that he is "a life-long Republican voter who was recently released from incarceration" and asks for assistance and "expedited review." *Id*. ¶ 5, Ex. D.

It is unknown whether the partisan affiliations of these restoration applicants and/or of the support-letter authors in their favor has played or will play a role in any decisions to grant voting rights restoration. These communications demonstrate that signaling that an applicant shares the political viewpoints or partisan affiliations of *any* governor of *any* political party can be implicit or explicit. Regardless of the disposition of any particular application, because nothing in Virginia law *prevents* Governor Youngkin from issuing—or withholding—these licenses to vote based on

an applicant's viewpoints or partisan affiliation, Defendants' restoration system violates the First Amendment.

### 2.    Lack of Reasonable, Definite Time Limits (Count Two)

Plaintiff also claims in Count Two that a lack of reasonable, definite time limits on the exercise of the licensor's discretion also violates the First Amendment. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990), *overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 774-775 (2004). Virginia's voting rights restoration scheme also lacks any reasonable, definite time limits by which Defendant Governor Youngkin must make a decision to grant or deny a restoration application.

The Supreme Court also has held that a licensing scheme "that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *FW/PBS, Inc.*, 493 U.S. at 226. This is because "[w]here the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion." *Id*. at 227; *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 802 (1988) (same). Without fixed, neutral time limits, there is a significant risk of arbitrary or discriminatory treatment of pending applications. This is also why plaintiffs asserting First Amendment unfettered discretion claims need not first apply for and be denied a license, lest defendants shield themselves from liability by simply retaining and never making a decision on certain applications.

Governor Youngkin has admitted that "there is no time limit by which [he] must grant or deny an application for voting rights restoration." Sherman Decl. ¶ 2, Ex. A at Response to Request for Admission No. 4, at 2. Therefore, as a matter of law, Defendants' restoration policy violates the First Amendment and must be struck down.

Absent reasonable, definite time limits—as required by the Constitution in *any* licensing scheme regulating the exercise of First Amendment-protected expressive conduct such as this—pending applications languish, and licensors can selectively choose which applications may receive expedited review and which will not. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ *See, e.g.,* Sherman Decl. ¶ 7, Ex. F at Hawkins_Def_001664-1665 (requesting status on application pending for five months); Hawkins_Def_001681-1682 (requesting status on application pending for nearly seven months); and Hawkins_Def_001702 (requesting status on pending application hoping to get a decision in time for the November 2022 election).[38] But not all applicants meet such delays; as with the lack of objective rules and criteria, this is another facet of Defendants' arbitrary system of restoration. Such an unreasonable system with no definite time limits on the Governor's decision-making enables biased treatment and is accordingly forbidden by the First Amendment.

## V.    CONCLUSION

Accordingly, Plaintiff respectfully requests that this Court grant summary judgment in his favor as to both Counts One and Two and issue a declaratory judgment finding both violations of the First Amendment. To remedy these constitutional violations, Plaintiff respectfully requests that this Court issue a permanent injunction requiring Defendants to implement a non-arbitrary system

---

[38] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

of voting rights restoration governed by objective rules and criteria and reasonable, definite time limits.

 Dated: February 14, 2024                              Respectfully submitted,

                                                       */s/      Terry C. Frank*  
                                                       Terry C. Frank, Esq. (VSB No. 74890)
                                                       TERRY FRANK LAW
                                                       6722 Patterson Ave., Ste. B
                                                       Richmond, VA 23226
                                                       P: 804.899.8090
                                                       F: 804.899.8229
                                                       terry@terryfranklaw.com

                                                       Fair Elections Center
                                                       1825 K St. NW, Suite 701
                                                       Washington, DC 20006
                                                       P: (202) 331-0114

                                                       Jonathan Lee Sherman, Esq.
                                                       (D.C. State Bar No. 998271)
                                                       jsherman@fairelectionscenter.org
                                                       *Admitted pro hac vice*

                                                       Michelle Elizabeth Kanter Cohen, Esq.
                                                       (D.C. State Bar No. 989164)
                                                       mkantercohen@fairelectionscenter.org
                                                       *Admitted pro hac vice*

                                                       Beauregard William Patterson, Esq.
                                                       (WI State Bar No. 1102842)
                                                       bpatterson@fairelectionscenter.org
                                                       *Admitted pro hac vice*

                                                       Nina G. Beck, Esq.
                                                       (WI State Bar No. 1079460)
                                                       nbeck@fairelectionscenter.org
                                                       *Admitted pro hac vice*

                                                       *Counsel for Plaintiff George Hawkins*

## CERTIFICATE OF SERVICE

I certify that on February 14, 2024, I filed the foregoing with the Clerk of the Court using

the CM/ECF system, which will send a "Notice of Electronic Filing" to the CM/ECF participants.

Andrew N. Ferguson (VSB #86583)
Steven G. Popps (VSB #80817)
Kevin M. Gallagher (VSB #87548)

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
AFerguson@oag.state.va.us
Kgallagher@oag.state.va.us
spopps@oag.state.va.us

Charles J. Cooper (*Pro Hac Vice*)
Haley N. Proctor (VSB #84272)
Joseph O. Masterman (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
hproctor@cooperkirk.com
jmasterman@cooperkirk.com
jramer@cooperkirk.com

*/s/ Terry C. Frank*
Terry C. Frank, Esq. (VSB No. 74890)
TERRY FRANK LAW
6722 Patterson Ave., Ste. B
Richmond, VA 23226
P: 804.899.8090
F: 804.899.8229
terry@terryfranklaw.com