# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

GEORGE HAWKINS,                              )
                                             )
      Plaintiff,                       )
                                             )
v.                                           )   Civil Action No. 3:23-cv-232-JAG
                                             )
GLENN YOUNGKIN, Governor of Virginia,        )
in his official capacity, et al.,            )
                                             )
      Defendants.                      )

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Jason S. Miyares
   *Attorney General*

Andrew N. Ferguson (VSB #86583)
   *Solicitor General*

Charles J. Cooper (*Pro Hac Vice*)
Haley N. Proctor (VSB #84272)
Joseph O. Masterman (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Steven G. Popps (VSB #80817)
   *Deputy Attorney General*

Erika L. Maley (VSB #97533)
   *Principal Deputy Solicitor General*

Kevin M. Gallagher (VSB #87548)
   *Deputy Solicitor General*

*Counsel for Defendants Glenn Youngkin and Kelly Gee*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
AFerguson@oag.state.va.us

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

RESPONSE TO STATEMENT OF FACTS .............................................................................. 3

LEGAL STANDARD............................................................................................................... 5

ARGUMENT .......................................................................................................................... 5

    I.    Hawkins's First Amendment Claims Are Meritless............................................................ 5

    II.    Hawkins's Statistical Analysis Is Neither Sound Nor Material ...................................... 7

        A.    The Commonwealth Diligently Administers Its Comprehensive Voting Restoration Process ...................................................................................................................8

            1.    The Voting Restoration Process Provides For Comprehensive Individual Consideration Informed By Data From Multiple State Agencies ............................... 8

            2.    Defendants Diligently Research, Assess, And Decide Whether To Grant Felons' Applications On An Individualized Basis ................................................................ 13

        B.    Plaintiff Offers No Evidence Of Actual Viewpoint Discrimination In The Restoration Process .................................................................................................................16

CONCLUSION...................................................................................................................... 20

CERTIFICATE OF SERVICE ............................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleman v. Beshear,*
No. 23-590, 2024 WL 674760 (U.S. Feb. 20, 2024) ...................................................6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................................18

*Beacham v. Braterman,*
300 F. Supp. 182 (S.D. Fla.), *aff'd*, 396 U.S. 12 (1969)............................................5

*Bowen v. Quinn,*
561 F.3d 671 (7th Cir. 2009) ........................................................................................7

*Christian Legal Soc. Chapter of the University of Cal., Hastings Coll. of the Law*
*v. Martinez,*
561 U.S. 661 (2010)..................................................................................................11, 12

*Connecticut Bd. of Pardons v. Dumschat,*
452 U.S. 458 (1981)....................................................................................................5, 10

*Hand v. Scott,*
888 F.3d 1206 (11th Cir. 2018) .................................................................6, 7, 17, 19

*Howard v. Gilmore,*
205 F.3d 1333, 2000 WL 203984 (4th Cir. Feb. 23, 2000) ....................................6

*Howell v. McAuliffe,*
292 Va. 320 (2016) .......................................................................................................12

*Irby v. Virginia State Bd. of Elections,*
889 F.2d 1352 (4th Cir. 1989) .....................................................................................6

*Juniper v. Hamilton,*
529 F. Supp. 3d 466 (E.D. Va. 2021) .......................................................................11

*Lostutter v. Kentucky,*
No. 22-5703, 2023 WL 4636868 (6th Cir. July 20, 2023)........................................6

*Ohio Adult Parole Auth. v. Woodard,*
523 U.S. 272 (1998)....................................................................................................5, 8

*Republican Party of North Carolina v. Martin,*
980 F.2d 943 (4th Cir. 1992) .......................................................................................6

*Richardson v. Ramirez*,
    418 U.S. 24 (1974) ..........................................................................................5

*Rossignol v. Voorhaar*,
    316 F.3d 516 (4th Cir. 2003) ..........................................................................5

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ....................................................................................7

*Washington v. Finlay*,
    664 F.2d 913 (4th Cir. 1981) ..........................................................................6

## Other Authorities

Fed. R. Civ. P. 56(a) ........................................................................................5

L. Cv. R. 56(B) ................................................................................................3

**INTRODUCTION**

Plaintiff Hawkins, in his own words, "claims that Virginia's voting rights restoration system functions as a licensing system governing First Amendment-protected expressive conduct, triggering the operation of the unfettered discretion doctrine under *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), and related Supreme Court precedents." Memo. in Supp. of Pl.s' Mot. for Summ. J. (Pl.'s MSJ Mem.) at 19 (ECF No. 57). Hawkins thus argues that the First Amendment prohibits the Governor of Virginia (and presumably the governors of every other State) from exercising discretion in the process of restoring convicted felons' voting rights under his clemency power. But the clemency power has been committed to executive discretion since the Nation's founding, and the clemency power in Virginia has included the discretionary restoration of felons' voting rights for over 150 years. One would therefore expect Hawkins to offer some explanation for how such a supposed violation of the First Amendment—a facial violation no less—could go unnoticed for so long. He offers none. One would also expect Hawkins to inform this Court that both the Sixth and the Eleventh Circuits have rejected precisely the same First Amendment claim, relying on precisely the same Supreme Court cases. After all, Hawkins's counsel represented the plaintiff felons in both cases. Yet, those cases are nowhere mentioned, let alone distinguished, in Hawkins's motion papers. Having lost in court twice before, Hawkins's counsel is shopping for a different answer here.

Perhaps sensing the legal infirmities of his argument, Hawkins attempts to gin up suspicion regarding the restoration process. First, he deploys a litany of cherry-picked and half-baked statistics that, he says, suggest the restoration process is "arbitrary." Although (as Hawkins admits) these arguments are legally irrelevant, they collapse on even a cursory inspection—and many are contradicted by facts to which he has stipulated. For example, ██████████████████

1

[REDACTED] Hawkins also tries to paint a picture of applications languishing for years. But the stipulated facts and [REDACTED]

[REDACTED]

Second, Hawkins attempts to raise the specter of viewpoint discrimination—most prominently by noting that two Republican State Senators, DeSteph and Cosgrove, wrote letters of support on behalf of three separate applicants. Some might think it admirable that a public official writes in support of restoring voting rights for a deserving constituent who is seeking a second chance; Hawkins thinks it portends a constitutional violation. But the record contains not a shred of evidence that partisan affiliation has ever played a role in any application decision, and these three individual applications—[REDACTED]—certainly do not suggest otherwise. Indeed, the letters are not remotely partisan; [REDACTED]

[REDACTED] Even Hawkins is forced to admit that no evidence suggests any illicit motive.

Once the smoke clears from Hawkins's statistical sideshow, the legal question is as straightforward as before. As decades of Supreme Court precedent, centuries of historical practice,

and both on-point court of appeals decisions show, Virginia's restoration process is constitutional, and Hawkins's claims fail as a matter of law. The Court should therefore deny his motion for summary judgment and grant Defendants' motion for summary judgment.

## RESPONSE TO STATEMENT OF FACTS

Under Local Civil Rule 56(B), a brief in response to a motion for summary judgment must "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue *necessary to be litigated* and citing the parts of the record relied on to support the facts alleged to be in dispute." L. Cv. R. 56(B) (emphasis added). As Plaintiff has made clear, he brings facial challenges to Virginia's voting restoration scheme based on the fact that the Governor exercises discretion when restoring convicted felons' voting rights. Pl.'s MSJ Mem. at 18 ("Mr. Hawkins has asserted facial challenges."). Accordingly, Defendants do not believe there are any facts that are "necessary to be litigated" to resolve Hawkins's claims—especially given the parties' Joint Stipulation of Undisputed Facts (JSUF) (ECF No. 59).

Nevertheless, though not required under Local Civil Rule 56(B), Defendants note that they dispute the following facts listed by Plaintiff:

6–7. Defendants dispute that "Mr. Hawkins applied for voting rights restoration twice," once in "early May 2023" and once "[o]n or around June 18, 2023." Defendants have no record of a May 2023 application from Hawkins. See Ex. 1, Declaration of Jennifer Moon (Moon Decl.) at ¶ 10. Defendants have record of Hawkins applying for rights restoration only once, on June 18, 2023. *Ibid.*

28–29. Defendants dispute ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

35. Defendants dispute ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

36. Defendants dispute ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Further, Defendants dispute ¶ 36 to the extent Plaintiff asserts or implies that the coded designation of "ineligible" or "ineligible at this time" is a disposition other than a denial, as explained in the parties' joint stipulation of undisputed facts. See JSUF ¶ 31 ("all denials of voting restoration applications are coded with only the following three status codes in Defendants' internal database: 'ineligible,' 'not granted at this time,' or 'ineligible at this time'").

37. Defendants dispute ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Further, Defendants dispute ¶ 37 to the extent Plaintiff asserts or implies that the coded designation of "ineligible" or "ineligible at this time" is a disposition other than a denial, as explained in the parties' joint stipulation of undisputed facts. See JSUF ¶ 31 ("all denials of voting restoration applications are coded with only the following three

status codes in Defendants' internal database: 'ineligible,' 'not granted at this time,' or 'ineligible at this time'").

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court must "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing th[e] motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotation marks omitted).

## ARGUMENT

### I. Hawkins's First Amendment Claims Are Meritless

Defendants' memorandum in support of their motion for summary judgment explains in detail why Hawkins's facial challenges fail as a matter of law, see Memo. in Support of Defs.' Mot. for Summ. J. (Defs.' MSJ Mem.) (ECF No. 61). Defendants incorporate that memorandum in its entirety, and will not unnecessarily enlarge this submission by repeating that analysis here. The short of it is this:

As a general matter, discretionary clemency regimes, like Virginia's voting-restoration process, are rarely, if ever, subject to judicial review. See *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981); *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284–85 (1998); Defs.' MSJ Mem. at 8–9. And the Supreme Court has summarily affirmed—and favorably cited that summary affirmance—a decision holding flatly that a discretionary vote-restoration process was "not subject to judicial control." See *Beacham v. Braterman*, 300 F. Supp. 182, 184 (S.D. Fla.), *aff'd*, 396 U.S. 12 (1969); *Richardson v. Ramirez*, 418 U.S. 24, 53–54 (1974) (citing *Beacham* as part of the "settled historical and judicial understanding of the Fourteenth Amendment's effect on state laws disenfranchising convicted felons").

Moreover, Hawkins does not dispute that the Commonwealth's restoration process satisfies the Fourteenth Amendment, and Fourth Circuit precedent makes clear that the First Amendment as incorporated against the States by the Due Process Clause of the Fourteenth Amendment provides no greater protection for voting rights than other provisions of the Fourteenth Amendment. See *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 959 n.28 (4th Cir. 1992); *Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352, 1359 (4th Cir. 1989); *Washington v. Finlay*, 664 F.2d 913, 927 (4th Cir. 1981). This longstanding principle helps explain why the Fourth Circuit swiftly rejected a previous First Amendment challenge to Virginia's voting-restoration process. See *Howard v. Gilmore*, 205 F.3d 1333 (Table), 2000 WL 203984, at *1 (4th Cir. Feb. 23, 2000) (The "First Amendment creates no private right of action for seeking reinstatement of previously canceled voting rights.").

It follows that Hawkins's reliance on the speech-licensing cases fails, as both the Sixth and Eleventh Circuits have squarely held. See *Lostutter v. Kentucky*, No. 22-5703, 2023 WL 4636868 (6th Cir. July 20, 2023); *Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018). "[N]one of the cited [speech-licensing] cases involved voting rights or even mentioned the First Amendment's interaction with the states' broad authority expressly grounded in § 2 of the Fourteenth Amendment to disenfranchise felons and grant discretionary clemency." *Hand*, 888 F.3d at 1212–13. And as the Sixth Circuit explained, "while a person applying for a newspaper rack or parade permit is attempting to exercise his or her First Amendment right to freedom of speech, a felon can invoke no comparable right when applying to the Governor for a pardon because the felon was constitutionally stripped of the First Amendment right to vote." *Lostutter*, 2023 WL 4636868, at *4. Just last week, the Supreme Court denied the *Lostutter* plaintiffs' petition for certiorari with no noted dissents. See *Aleman v. Beshear*, No. 23-590, 2024 WL 674760 (U.S. Feb. 20, 2024). In

sum, even if voting were "politically expressive conduct," Pl.'s MSJ Mem. at 20, but see Memo. in Support of Defs.' Mot. to Dismiss at 25–26 (ECF No. 27), it is not politically expressive conduct in which Mr. Hawkins has a right to engage. Virginia's restoration (not licensing) process therefore is not subject to the unfettered discretion doctrine.

Finally, the vague remedy Hawkins seeks raises a quintessential political question and urges the Court to exceed its equitable power. On Hawkins's theory, a court would ultimately need to adjudicate any claim that the restoration process does not contain *enough* "rules and/or criteria" or *short enough* "time limits." Second Am. Compl at 25 (SAC) (ECF No. 22). There "are no legal standards discernible in the Constitution for making such judgments." See *Rucho v. Common Cause*, 139 S. Ct. 2484, 2500 (2019). "Any judicial decision on what is fair in this context would be an unmoored determination of the sort characteristic of a political question beyond the competence of the federal courts." *Ibid.* (quotation marks omitted); see also *Bowen v. Quinn*, 561 F.3d 671, 676 (7th Cir. 2009) ("We therefore balk at the idea of federal judges' setting timetables for action on clemency petitions by state governors."). Moreover, an injunction providing "guidance" to Defendants would exceed the remedial power of "a court sitting in equity." See *Hand*, 888 F.3d at 1214. Thus, Hawkins's requested remedy only underscores that his claims fail as a matter of law.

## II.     Hawkins's Statistical Analysis Is Neither Sound Nor Material

Hawkins's memorandum is shot through with factual assertions that would be relevant only to a Due Process Clause challenge or an as-applied viewpoint discrimination claim. But throughout this litigation, Hawkins has affirmatively disavowed that he is bringing either claim. And once one analyzes his factual assertions, Hawkins's refusal to pursue those theories is understandable because both would still fail as a matter of law. Under any analysis, Virginia's voting restoration process is constitutional.

### A. The Commonwealth Diligently Administers Its Comprehensive Voting Restoration Process

Hawkins has confirmed that he is not bringing a Due Process Clause challenge. Memo. in Opp. to Defs. Mot. to Dismiss Pls.' Second Am. Compl. (MTD Opp.) at 16 (ECF No. 30) ("Plaintiffs have also not asserted any due process challenges under the Fourteenth Amendment."). He could not do so anyway. Under the Due Process Clause, the Commonwealth's discretionary restoration process could be subject to, at most, "*minimal*" judicial limits, such as the prohibition of "a scheme whereby a state official flipped a coin to determine whether to grant clemency." *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring) (emphasis in original). As the stipulated facts establish, Defendants' restoration process is comprehensive, detailed, and just, and it is nothing like the extreme scenario of "flipping a coin." See also Defs.' MSJ Mem. at 4–6 (detailing the restoration process). Hawkins caricatures this process as "arbitrary" or "haphazard" by reciting a host of gerrymandered statistics that, on even cursory inspection, have no persuasive value.

#### 1. The Voting Restoration Process Provides For Comprehensive Individual Consideration Informed By Data From Multiple State Agencies

Although Hawkins suggests the Commonwealth's voting-restoration process is "haphazard" or "arbitrary," the undisputed facts show otherwise. First, applicants must apply and provide responses to numerous questions. See JSUF ¶¶ 9–10, 12. Second, every applicant is subject to a multi-agency review that provides various types of information, including an applicant's carceral status, citizenship status, and criminal history. *Id.* ¶¶ 18, 21–26. Third, this information is used to form the basis for the Secretary's recommendation on each application to the Governor. See *id.* ¶ 27. Finally, the Governor exercises his constitutional discretion to grant or deny an application based on his predictive judgment regarding whether the applicant will live as a responsible citizen and member of the political body. *Ibid.*; *id.* ¶ 15.

Hawkins's assertion of an "arbitrary" process stems largely from his overreading and misinterpretation of the report produced during discovery that reflects part of the Secretary's internal database for voting restoration. See Hawkins_Def_001660. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[1] Compounding the error is Hawkins's misunderstanding that non-citizens may use the same application process to seek restoration of their civil right to serve as a *notary public*—as Hawkins's own exhibit demonstrates—and ███████████████████████████████████



██████████ Most notably, Defendants obtain an applicant's criminal history from the Central Criminal Records Exchange. See JSUF ¶¶ 18, 27. And the Secretary uses an applicant's criminal history when making "a recommendation to the Governor as to the disposition of the application." *Id.* ¶ 27. ██████████

██████████

If anything, ██████████ demonstrates that Defendants' voting-restoration process works precisely as expected. Because the process is a holistic review that does not turn on any one factor, see Defs.' MSJ Mem. at 9, ██████████ ██████████. As the Supreme Court has explained, a clemency decision "generally depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision." *Dumschat*, 452 U.S. at 464. ██████████ ██████████ will warrant a different predictive judgment as to whether one individual "will live as a responsible citizen and member of the political body" and the other would not. See JSUF ¶ 15.

██████████

██████████

██████████

██████████

██████████

See ECF No. 50-2 at 2 (Secretary's Website's FAQ noting that "[n]oncitizens are not eligible to vote . . . but may be eligible to serve as a notary public" and can seek to have their "rights restored" for that purpose).



Separately, Hawkins suggests the Governor's denial of Hawkins's restoration application as "ineligible at this time" is somehow "mysterious." Pl.'s MSJ Mem. at 16–17. Plaintiff considers the denial "mysterious" because he satisfies certain relevant criteria: he is not incarcerated, nor currently subject to a pending felony charge, nor on supervised release, nor a non-citizen. See *ibid.* But as Hawkins stipulated, the Governor used the phrasing "ineligible at this time" simply to mean that he was *denying* Hawkins's application.[2] Hawkins merely satisfied the criteria that determine

---

[2] Hawkins has stipulated that the "ineligible at this time" code is a denial. See JSUF ¶¶ 31–32; see also Pl.'s MSJ Mem. at 17 ("an ineligibility determination is tantamount to a denial"); *Christian Legal Soc. Chapter of the University of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010) (*CLS*) ("Factual stipulations are binding and conclusive." (brackets and quotation marks omitted)); *Juniper v. Hamilton*, 529 F. Supp. 3d 466, 504 n.65 (E.D. Va. 2021) (Gibney, J.) (same).

whether he is eligible to have his application *submitted* to the Governor for consideration on the merits. See JSUF ¶ 28. Hawkins is thus not ineligible *for consideration* on the merits at this time, but he is ineligible *to have his voting rights restored* at this time—that is, his application was denied. And the denial of Hawkins's application is far from "mysterious." The Governor's holistic, case-by-case determination of applications turns upon, among other factors, whether the applicant committed a violent crime, how recent the applicant's conviction is, and the applicant's conduct since the conviction. See Ex. 1 to Defs.' Mot. for Summ. J. at 3 (ECF No. 61-1). Here, Hawkins committed multiple serious violent crimes, including attempted murder in the first degree and aggravated malicious wounding. See Decl. of Kay Coles James (ECF No. 27-1) ¶ 17. And while he completed his incarceration, he did so in May 2023, only shortly before submitting his application. *Id.* ¶¶ 4–5. He thus had little time to demonstrate that he had renounced violent criminal behavior and would now live as a responsible citizen and member of the political body. There is nothing "arbitrary and haphazard" about denying the application of an attempted murderer who only recently finished serving his prison sentence. Pl.'s MSJ Mem. at 17. To the extent any misunderstanding results from using the word "eligible" differently in other contexts, that misunderstanding says nothing about how the restoration process is actually implemented—which is described in the parties' "binding and conclusive" joint stipulation. *CLS*, 561 U.S. at 677.

Ultimately, the Commonwealth's restoration process works precisely as described and required under the Virginia Constitution: it provides for individualized consideration of each applicant and is informed by data from the applicant and numerous state agencies. See *Howell v. McAuliffe*, 292 Va. 320, 341 (2016) (requiring review "on an individualized case-by-case basis taking into account the specific circumstances of each"). The process is undoubtedly constitutional.

**2. Defendants Diligently Research, Assess, And Decide Whether To Grant Felons' Applications On An Individualized Basis**

As set forth in the joint stipulation of undisputed facts, Defendants' current restoration process was not fully implemented until December 9, 2022. JSUF ¶ 7. Since that date, ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████

█████████████████████████████████ Defendants' current policy is to notify applicants who

did not, in fact, lose their voting rights. See JSUF ¶ 19. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[REDACTED]

Next, Hawkins tries to leverage emails to further suggest that Defendants take an unreasonably long time to grant or deny applications, but these quotations are not what they seem. See Pl.'s MSJ Mem. at 17 n.37. For example, Hawkins quotes an individual's email stating that her application had been "pending forever," but [REDACTED]

[REDACTED]

[REDACTED]. Compare Ex. F. to Declaration of Jonathan Sherman at 7 (ECF No. 62-4) (email from [REDACTED] stamped Hawkins_Def_001680), with [REDACTED].

Hawkins also quotes an email from an individual who asserted it had been "a couple of months" since he had applied, but [REDACTED]. Compare Ex. F to Declaration of Jonathan Sherman at 6 (email from [REDACTED] stamped Hawkins_Def_001676), with [REDACTED]. Similarly, Hawkins quotes two emails sent by one individual asserting that the individual's application had been pending "for a few months," but [REDACTED] [REDACTED] Compare Ex. F to

Declaration of Jonathan Sherman at 13–14 (emails from ████████████ stamped Hawkins_Def_001686 and 1687), with ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Indeed, Hawkins himself alleges that he applied for rights restoration twice, but Defendants have no record of a second application. Moon Decl. ¶ 10.

Finally, Hawkins suggests that a letter in which former Secretary James described the restoration process is somehow different from Defendants' interrogatory responses. See Pl.'s MSJ Mem. at 23. In Secretary James's letter, she highlighted that the "Governor firmly believes in the importance of second chances for formerly incarcerated individuals as they look to become active members of their community and citizenry." See Ex. J to Declaration of Jonathan Sherman at 1 (ECF No. 57-1). And she explained that the Governor and his Administration "consider each person individually and take into consideration the unique elements of each situation." *Id.* at 2. Here, Defendants have reiterated that they engage in "an individualized, case-by-case," review, Ex. B to Declaration of Jonathan Sherman at 2 (ECF No. 57-1), as part of their "holistic process to make a predictive judgment about whether an individual applicant can live as a responsible citizen and member of the political body," Ex. 1 to Defs.' Mot. for Summ. J. at 3 (ECF No. 61-1)—which is precisely what Secretary James described. The Governor takes his clemency power to restore voting rights seriously, and he has set up a process to ensure applicants receive the fair and just consideration they deserve.

### B. Plaintiff Offers No Evidence Of Actual Viewpoint Discrimination In The Restoration Process

Hawkins has repeatedly stressed he is *not* arguing that he has been the subject of viewpoint discrimination in the voting restoration process. See Pl.'s MSJ Mem. at 18; MTD Opp. at 28.

Instead, his claim is that he suffers a First Amendment injury by merely being subject to the Commonwealth's discretionary restoration process. Therefore, as he describes his own theory, the "existence of an actual, improper discriminatory or biased motive in granting or denying any particular application need not be demonstrated." Pl.'s MSJ Mem. at 19.

Nor could Hawkins even plausibly *allege* that he was the subject of viewpoint discrimination. A "discretionary felon-reenfranchisement scheme that was facially or intentionally designed to discriminate based on viewpoint—say, for example, by barring Democrats, Republicans, or socialists from reenfranchisement on account of their political affiliation—might violate the First Amendment." *Hand*, 888 F.3d at 1211–12. But there is no basis whatsoever for concluding, or even speculating, that Defendants engage in viewpoint discrimination in the restoration process. As an initial matter, Defendants do not request information regarding any applicant's political affiliations or beliefs. As just one example, Defendants have no idea what Hawkins believes or says about any political matter, and nothing in the record discloses his political beliefs. Hawkins speculates that Defendants *could* obtain such information by searching through "political donation or voter registration history and social media accounts." Pl.'s MSJ Mem. at 1. But as the parties' stipulated facts demonstrate, Defendants do not inspect political donation history, political affiliations, or social media postings as part of the restoration process. *See* JSUF ¶¶ 16–27 (laying out all steps of the restoration process); Moon Decl. ¶ 9. Instead, the process turns on information such as an individual's carceral status and criminal history.

From ███████████████████, Hawkins has plucked four that, he says, demonstrate the *possibility* of viewpoint discrimination in the restoration process. To begin, Hawkins focuses on letters submitted by State Senator DeSteph on behalf of two applicants and a letter submitted by then-State Senator Cosgrove on behalf of a different applicant. *See* Pl.'s MSJ Mem. at 26. As

an initial matter, to even entertain Hawkins's implied assertion that these letters raise the specter of viewpoint discrimination, one must layer cynical inference upon cynical inference. For example, one must infer that the applicants mentioned in those letters are Republicans, that Senator DeSteph and former Senator Cosgrove would write letters only on behalf of Republicans, that Defendants would *know* Senator DeSteph and former Senator Cosgrove write letters only on behalf of Republicans, and that Defendants granted the applications on the basis of these partisan political inferences when, but for those inferences, they would not have granted the individuals' applications. That chain of inferences is baseless.[3] To the contrary, the letters show that Senator DeSteph and former Senator Cosgrove supported the applications because the applicants had become "model citizen[s]," Ex. K to Declaration of Jonathan Sherman at 1 (ECF No. 62-5), "with strong ties to the community and a pledge to succeed," Ex. C to Declaration of Jonathan Sherman at 2, 3 (ECF No. 62-1)—by, for instance, ███████████████████████████████ ████████████████████████████████████████████████

Even Hawkins stops short of expressly suggesting that Senator DeSteph and former Senator Cosgrove were attempting to communicate to the Governor that these applications should be granted because the individuals were Republicans—or that the Governor somehow decoded and acted on this secret partisan motive. Pl.'s MSJ Mem. at 26 ("It is unknown whether the partisan affiliations of these restoration applicants and/or of the support-letter authors in their favor has played or will play a role in any decisions to grant voting rights restoration."). The completely unremarkable—and, indeed, admirable—fact that public servants write letters on behalf of constituents whom they believe warrant a second chance does not in the least reflect a restoration

---

[3] Indeed, this stacking of implausible inferences would not even survive a motion to dismiss, let alone warrant a *grant* of summary judgment. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

process "facially or intentionally designed to discriminate based on viewpoint." *Hand*, 888 F.3d at 1211–12.

The undisputed facts also undermine Hawkins's reliance on these letters. First, as the parties have stipulated, the applications for the individuals mentioned in Senator DeSteph's letters ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Thus, any alleged improper motive cannot be attributed to the current restoration process. Second, the application for the individual mentioned in former Senator Cosgrove's letter ████████████████████████████████. See ████████████████████████████████████████████████████████████████████████ ██████████████████

Hawkins's final example is an individual who emailed the Governor's office stating that he was a "lifelong Republican voter." Pl.'s MSJ Mem. at 26 (quotation marks omitted). Hawkins neglects to note █ ████████████████████████████████████████████████████████ ██ thus fatally undermines any implication that Defendants engage in viewpoint discrimination in the restoration process.

Apart from these four applicants, thousands upon thousands of individuals applied for restoration. Nowhere in the process did Defendants seek individuals' political affiliation or viewpoint, and the only example Hawkins provides where Defendants could possibly have known anything about an applicant's political views—because the applicant gratuitously volunteered it in an email—████████████████████████████████████████████████.

Defendants' restoration process is precisely what it looks like: an individualized and holistic review process where Defendants make a predictive judgment about whether the applicant will live as a responsible citizen and member of the political body. See Defs.' MSJ Mem. at 5. That process is unquestionably constitutional.

## CONCLUSION

For these reasons and those explained in Defendants' memorandum in support of their motion for summary judgment, the Court should deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

Dated: February 28, 2024

Respectfully submitted,

GLENN YOUNGKIN
KELLY GEE

By:   */s/ Andrew N. Ferguson*
    Andrew N. Ferguson (VSB #86583)
    *Solicitor General*

    Jason S. Miyares
    *Attorney General*

Charles J. Cooper (*Pro Hac Vice*)
Haley N. Proctor (VSB #84272)
Joseph O. Masterman (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Glenn Youngkin and Kelly Gee*

    Steven G. Popps (VSB #80817)
    *Deputy Attorney General*

    Erika L. Maley (VSB #97533)
    *Principal Deputy Solicitor General*

    Kevin M. Gallagher (VSB #87548)
    *Deputy Solicitor General*

    Office of the Attorney General
    202 North Ninth Street
    Richmond, Virginia 23219
    (804) 786-2071 – Telephone
    (804) 786-1991 – Facsimile
    AFerguson@oag.state.va.us

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on February 28, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

*Andrew N. Ferguson*
Andrew N. Ferguson (VSB #86583)
*Solicitor General*
