UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GEORGE HAWKINS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 3:23-cv-00232 |
| GLENN YOUNGKIN, in this official | ) |
| capacity as Governor of Virginia, and | ) |
| KELLY GEE, in her official capacity | ) |
| as Secretary of the Commonwealth | ) |
| of Virginia | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**1. Defendants' "responsible citizen" test for voting rights restoration clearly violates the First Amendment.**

The headline here is that Defendants make no argument—*even in the alternative*—that their voting rights restoration scheme satisfies the First Amendment unfettered discretion doctrine. *See* ECF No. 67 at 11 ("Virginia's restoration (not licensing) process therefore is not subject to the unfettered discretion doctrine.").[1] They do not engage with the Supreme Court's relevant First Amendment precedents because they believe that voting rights restoration is clemency and that clemency is exempt from First Amendment scrutiny. For the reasons stated in Plaintiff's

---

[1] Plaintiff cites to the sealed version of Defendants' brief in response to Plaintiff's motion for summary judgment. Because Plaintiff was served an unstamped version of that sealed version of the brief, Plaintiff cites to the corresponding ECF page number in the unsealed, redacted version. ECF No. 66.

1

opposition to Defendants' motion for summary judgment (and not restated here), Defendants' principal defense is incorrect.[2]

Because Defendants do not argue that they are complying with the First Amendment, the parties' dispute can and should be resolved as a matter of law based on Defendants' three crucial admissions: (1) "there are no rules, criteria, factors, or standards that constrain or otherwise limit, as a matter of law, the Governor's discretion to grant, deny, or take any other action on citizens' voting rights restoration applications," ECF No. 57-1, Sherman Decl. ¶ 3, Ex. B at Response to Interrog. No. 3, at 4; (2) beyond constitutional prohibitions on intentional discrimination based on "suspect classifications or the exercise of fundamental rights" and the inability to grant voting rights to an individual who fails to satisfy the other voting eligibility criteria, "Virginia law does not otherwise constrain or limit the Governor's individualized discretion when deciding whether to grant a citizen's voting-restoration application," *id.* at Response to Interrog. No. 1, at 2; and (3) Governor Youngkin grants or denies restoration based on his "predictive determination that an individual will live as a responsible citizen and member of the political body." *Id.* ¶ 2, Ex. A at Response to Interrog. No. 2, at 3. These admissions are dispositive of Plaintiff's Count One, the First Amendment unfettered discretion challenge to the lack of objective rules and criteria in Defendants' de facto vote-licensing scheme.

Plaintiff marshalled the facts and evidence contained in his summary judgment brief in anticipation of the alternative argument that Defendants ultimately have not made. During

---

[2] In this brief, Plaintiff largely only responds to any new or additional legal arguments raised by Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment. ECF No. 67. As to arguments that duplicate those found in Defendants' Memorandum in Support of their Motion for Summary Judgment, ECF No. 61, Plaintiff incorporates by reference all arguments from his Brief in Response to Defendants' Motion for Summary Judgment. ECF No. 65.

discovery, in response to Plaintiff's First Set of Interrogatories, it appeared that Defendants might argue that their restoration scheme complies with the First Amendment. Governor Youngkin asserted that he "use[s] multiple factors to guide [his] discretion in ultimately making a predictive determination that an individual will live as a responsible citizen and member of the political body" and then enumerated all of the fields and/or questions on the current rights restoration application as these purported "factors." Sherman Decl. ¶ 2, Ex. A at Response to Interrog. No. 2, at 3; *see also* ECF No. 59, Joint Stipulation of Undisputed Facts ("JSUF") ¶ 12 (listing information requested on rights restoration application). To preempt this potential argument, Plaintiff delved deeply into the evidence, especially the database entries, and presented on summary judgment those facts demonstrating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3] ECF No. 62 at 12-18. This conclusion is consistent with Defendants' three admissions above and with Defendants' statement in their opposition that "[b]ecause the [restoration] process is a holistic review that does not turn on any one factor, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" ECF No. 67 at 14 (internal citation omitted) (emphasis in original). Therefore, Defendants have admitted that they do not use any objective factors and criteria to grant or deny voting rights restoration applications, and that their purported "factors" fail to eliminate arbitrary decision-making, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Accordingly, because Defendants refuse to engage with the First Amendment precedents at issue and do not defend their system as compliant with the unfettered discretion doctrine, the

---

[3] All redactions in this Reply Brief, all descriptions or summaries of the database entries, *see* Sherman Decl., Ex. E, are subject to Plaintiff's original Motion to Seal, ECF No. 54, which has already been fully briefed.

facts and evidence contained in Plaintiff's opening brief—beyond Defendants' several crucial admissions—are of diminished relevance to Plaintiff's facial challenge. To put a finer point on it, Plaintiff does not *need* this evidence because the admissions above suffice to establish as a matter of law that there are no constraints on the Governor's discretionary restoration of voting rights, and that alone is dispositive of Count One. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 n.10 (1992). Nonetheless, that evidence retains value to (i) corroborate what Defendants have already conceded— ███████████████████████████████████████████

███████████████████████████████████████████ ; and (ii) illustrate for the Court that Defendants are not applying objective, uniform rules and criteria, meaning ███████████

███████████████████████████████████████

Despite Defendants' professions of good faith in administering what they call a "comprehensive, detailed, and just" restoration process, ECF No. 67 at 12, the parties are in fact before this Court because Governor Youngkin is fighting for the right to selectively deny Virginians the right to vote based on his *prediction* that they will not live as "responsible citizens"—a phrase or standard that not only lacks but *defies* objective definition. The Governor seeks to second-guess the criminal justice system and judge for himself whether Virginians convicted of felonies, like George Hawkins, have sufficiently reformed themselves such that he finds a particular applicant "deserving." *See* ECF No. 67 at 6.[4] But voting rights restoration is *not*

---

[4] Defendants contend that Mr. Hawkins has "had little time to demonstrate that he ha[s] renounced violent criminal behavior and would now live as a responsible citizen and member of the political body." ECF No. 67 at 16. In trying to explain away the confusing disposition of Mr. Hawkins' applications, Defendants cannot help but invent new rules on the fly. There is now apparently a de facto waiting period for people convicted of violent offenses, but that criterion is not found in either the public or non-public versions of Defendants' restoration eligibility policy. ECF No. 62

4

a pardon, as Virginia law underscores, *Howell v. McAuliffe*, 292 Va. 320, 337, 343 (2016), and deeming it a matter of purely discretionary executive "clemency" is constitutionally problematic. Conditioning the exercise of the right to vote—that most fundamental form of political expressive conduct—on a single government official's prediction as to whether a person will meet a hopelessly subjective and vague standard is anathema to the controlling First Amendment law. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–53 (1969). It is baffling that Defendants continue to quote *Connecticut Board of Pardons v. Dumschat* for the proposition that a clemency decision "generally depends not simply on objective factfinding, but also on *purely subjective evaluations* and on *predictions of future behavior* by those entrusted with the decision." 452 U.S. 458, 464 (1981) (emphasis added). This quotation only serves to underscore why Defendants' purely discretionary, prediction-based restoration scheme flagrantly violates the First Amendment.

Curiously, while Defendants fail to make any argument that their restoration regime satisfies the requirements of the First Amendment, they repeatedly tell this *federal* court in a *federal* constitutional challenge that their restoration scheme complies with the requirements of the *state* constitution as interpreted in *Howell*, which requires restoration on an "individualized case-by-case basis taking into account the specific circumstances of each." 292 Va. at 341. Defendants boldly conclude that Virginia's restoration process works "as described and required under the Virginia Constitution" and, therefore, it "is undoubtedly constitutional." ECF No. 67 at 16. Turning the Supremacy Clause on its head, Defendants appear to contend that to comply with the Virginia Constitution's mandates is to comply with the U.S. Constitution.

---

at 11 (Undisputed Material Facts ¶¶ 11-12); JSUF ¶¶ 11, 28. This is yet another example of Defendants either arbitrarily changing the rules or creating ad hoc, unwritten rules that are only applied to particular applicants.

5

That is not the only instance in which Defendants urge this Court to decide this case based on a point of state law. Much of Defendants' argument for granting summary judgment in their favor turns on the undisputed fact that Plaintiff and other disenfranchised people with felony convictions are presently ineligible to vote as a matter of *state* law. *See* ECF No. 61 at 16. Virginia law could not impose an arbitrary licensing scheme for otherwise-*eligible* Virginia voters; this, Defendants would surely concede, would be inconsistent with the First Amendment. But, in their view, such arbitrary licensing of the right to vote becomes constitutional when a disenfranchised citizen is currently *ineligible* to vote as a matter of state law. This argument is erroneous. Were this theory the law, then no disenfranchised person would ever have Article III standing to assert their federal constitutional rights, even if state officials were allocating or re-allocating voting rights based on height, singing ability, English proficiency, or sense of humor.

Ultimately, Defendants cannot forever disregard the First Amendment doctrine at issue. The application of the Supreme Court's rulings is clear: because voting is political expressive conduct, Plaintiff wins because there can be no arbitrary licensing of any expressive conduct. This inquiry does not turn on whether the "restoration process [is] 'facially or intentionally designed to discriminate based on viewpoint.'" ECF No. 67 at 21–23 (quoting *Hand v. Scott*, 888 F.3d 1206, 1211–12 (11th Cir. 2018)). In brief after brief, Defendants ignore the First Amendment rules in the precedents Plaintiff cites, which expressly ask only whether the licensing scheme is arbitrary and, therefore, vulnerable to the discriminatory exercise of discretion, and *not* whether it is intentionally designed to produce such results. *Forsyth Cnty.*, 505 U.S. at 133 n.10; *Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Schs.*, 457 F.3d 376, 389 (4th Cir. 2006) (emphasizing that First Amendment inquiry turns on "*risk* of viewpoint discrimination") (emphasis added).

Finally, Defendants also take issue with the inexorable corollary of the unfettered discretion Governor Youngkin wields—that licensors can access and make decisions based upon any information they can obtain on an applicant. Plaintiff has suggested ways in which the licensor can do this by way of reviewing publicly available registration or donation history or by reviewing publicly available writings or statements of an applicant, including social media postings. Defendants have responded with Jennifer Moon's Declaration, which asserts that the Secretary of the Commonwealth's Rights Restoration "Office does not inspect applicants' donation history, political affiliations, or social media postings as part of the restoration process." ECF No. 67-1, Declaration of Jennifer Moon ("Moon Decl.") ¶ 9. However, not only does that statement fail to acknowledge the fact that the Rights Restoration Office *could* conduct such an inspection, but it says nothing about what the *Governor*, his staff, his counsel, or any other agents can do or what applicants can do to signal or communicate their political views and partisan affiliations.

What is legally dispositive of the constitutional claim under the Supreme Court's decision in *Forsyth County* is whether there is anything "preventing" the Governor from using such information in his decision-making. 505 U.S. at 133 n.10; *see also Child Evangelism Fellowship of Md.*, 457 F.3d at 389. Moreover, the unfettered discretion doctrine is also concerned with the *risk* of self-censorship and chilling caused by purely arbitrary licensing like the scheme challenged here. So, even if a licensor were not reviewing the political views and leanings of individual applicants, there is per se harm from a system of unfettered discretion because there is nothing preventing the licensor from doing so. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 758 (1988) ("Only standards limiting the licensor's discretion will eliminate this danger by adding an element of certainty fatal to self-censorship."); *see also Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1072 (4th Cir. 2006) (holding policy

7

unconstitutional because there was nothing *preventing* administrators from exercising their discretion in a content-based manner, even though administrators claimed to apply content-neutral criteria). As construed by the Supreme Court, in addition to precluding the risk of viewpoint discrimination, the First Amendment was designed to prevent the deterrence of political expression through arbitrary licensing.

## 2. Defendants' criticisms of Plaintiff's factual assertions and evidence are misplaced.

Though Defendants' failure to make any argument in the alternative that their restoration scheme complies with the First Amendment reduces the materiality of some of these factual and evidentiary issues, Plaintiff will respond to a few of Defendants' assertions.

With respect to Mr. Hawkins' application specifically, Defendants strain to justify denying his application as "ineligible at this time." Taking a step back, there are three reasons that a restoration applicant would be denied. First, the applicant fails to meet Defendants' internal eligibility criteria. JSUF ¶ 28. Second, the application is incomplete. *Id.* Third, the Governor considers the complete application of an eligible applicant and denies the application on the merits. Under the first or second scenarios, the applicant should receive either the "ineligible" or "ineligible at this time" status code. Under the third scenario, the application should receive the "not granted at this time" status code. *Id.* ¶ 31. While all three status codes are effectively denials, they convey two very different reasons to the applicant.

It is undisputed that Mr. Hawkins satisfies Defendants' eligibility criteria, and there is no evidence that Defendants deemed his application incomplete. Nevertheless, Defendants have deemed him "ineligible at this time." Why not tell Mr. Hawkins (and presumably other similarly situated applicants) that he was denied on the merits and not for ineligibility? This is what makes Mr. Hawkins' denial mysterious and contrary to Defendants' own eligibility policy. The treatment

of Mr. Hawkins' application perfectly illustrates the arbitrariness and lack of transparency in Defendants' rights restoration scheme. Defendants employ a non-public eligibility "policy" and then communicate decisions to applicants that are inconsistent with said policy while using euphemistic and inaccurate language. For applicants like Mr. Hawkins who otherwise checked all the boxes, receiving a notice that he was "ineligible" without any explanation is evidence of an arbitrary, haphazard, and unconstitutional scheme.

Turning to the rights restoration database entries, while Defendants critique Plaintiff's presentation of facts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Defendants do not point to any evidence from the database entries that demonstrates their process complies with the dictates of the First Amendment.

Plaintiff agrees that the calculations and facts based on Governor Youngkin's grants and denials contained in the database entries carry less weight now that Defendants' summary judgment briefing has confirmed that Defendants *do not use any objective rules or criteria* in the rights restoration decision-making process and do not argue their restoration system complies with the First Amendment. Now it is clear that Defendants embrace the fact that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and do not even aspire to treat applicants in a non-arbitrary, uniform manner based on objective rules and criteria. They assert that Plaintiff's ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ demonstrates that Defendants' voting-restoration process works precisely as expected." ECF No. 67 at 14; *see also id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ will warrant a different predictive judgment as to whether one individual 'will live as a responsible citizen and member of the political body' and the other would not.").

Defendants' additional complaints concerning Plaintiff's factual contentions based on the rights restoration database all fail. Defendants' overarching criticism is that the database entries

9

upon which Plaintiff relied ███████████████████████████████

███████████████████████████████████████████████████████. ECF No. 67 at

18–19.

*First*, Defendants do not dispute the accuracy of *any* of Plaintiff's ████████

█████████████. *See* ECF No. 67 at 11–15.[5] ████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████

*Second*, Defendants have never qualified the reliability of their data production █████

█████████████████████████████ ECF No. 67 at 18 (emphasis in original). To the

contrary, Defendants stipulated that they produced a "portion of [their] internal database" and that

they "maintain the database in the ordinary course of business, strive to ensure its accuracy, and

do not presently have any reason to believe any database entries are inaccurate." JSUF ¶ 30.

Defendants contend that ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. ECF No. 67 at 18–19.

---

[5] Defendants attempt to minimize Plaintiff's facts further by ████████████████████
███████████████████████████████████████████████████████████████████
████████████████████████████ *See* L.C.R. 56(B) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

[6] ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
█████████████████████████████████████

*Third*, Defendants fail to dispute any of Plaintiff's proffered material facts relating to the length of time that applications have remained pending. ECF No. 62 at 18–20, ¶¶ 38–46; *see generally* ECF No. 67 at 7–9, 17–20. Therefore, each is deemed admitted. *See* L.C.R. 56(B) (any fact not specifically controverted by the opposing party may be deemed admitted). ██████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████ ECF No. 67 at 17 (citing ECF No. 62 at 19, ¶ 41). Further, Defendants criticize Plaintiff's reference to three individuals who expressed frustration at the length of time their applications were pending, ██████

████████████████████████████████████████████

█████████████. ECF No. 67 at 19. ██████████ Defendants ignore that, by agreement of the parties, their dataset only covers restoration applicants who applied on or after May 17, 2022. *See* JSUF ¶ 30. Defendants fail to acknowledge the strong possibility that each of these three individuals had applications pending prior to May 17, 2022.

*Fourth*, Defendants ████████████████████████████████ ████████████████████████████████████████. ECF No. 67 at 19 (citing Moon Decl. ¶¶ 7–9 (████████████████████)). Once again, Defendants cherry-pick the record. By their own telling, ████████████████

████████████████████████████████████████████

█████████. Moon Decl. ¶ 7 (████████████████████

---

7 ████████████████████████████████████████████
████████████████████████████████████████████

11



); *id.* ¶ 8 ().

Similarly, . Defendants ignore that applicants risk criminal prosecution if they register when they are not *absolutely certain* that they are eligible. *See* Va. Code Ann. § 24.2-1016 (making a false statement on a voter registration form a Class 5 felony, punishable with up to ten years in prison or up to $2,500 in fines).[8] Recurring delays such as these are symptomatic of a system unconstrained by any reasonable, definite time limits where Defendants feel no pressure to timely respond to applicants.

Accordingly, none of Defendants' criticisms undermine the veracity of Plaintiff's proffered facts and calculations regarding the database entries.

## CONCLUSION

For all the reasons above, Plaintiff respectfully requests that this Court grant summary judgment in his favor as to both Counts One and Two and deny Defendants' motion for summary judgment. Plaintiff respectfully requests that this Court issue a declaratory judgment finding both violations of the First Amendment, permanently enjoin Defendants' current voting rights restoration scheme, and require Defendants to implement a non-arbitrary system of voting rights restoration governed by objective rules and criteria and reasonable, definite time limits.

Dated: March 5, 2024                  Respectfully submitted,

                                                     */s/ Terry C. Frank*
                                                     Terry C. Frank, Esq. (VSB No. 74890)

---

[8] *Available at* https://vote.elections.virginia.gov/Registration/Ineligible ("Please be aware that making a false statement on a voter registration application is punishable under Virginia law as a felony. Violators may be sentenced up to 10 years in prison, or up to 12 months in jail and/or fined up to $2,500.").

TERRY FRANK LAW
6722 Patterson Ave., Ste. B
Richmond, VA 23226
P: 804.899.8090
F: 804.899.8229
terry@terryfranklaw.com

Fair Elections Center
1825 K St. NW, Suite 701
Washington, DC 20006
P: (202) 331-0114

Jonathan Lee Sherman, Esq.
(D.C. State Bar No. 998271)
jsherman@fairelectionscenter.org
*Admitted pro hac vice*

Michelle Elizabeth Kanter Cohen, Esq.
(D.C. State Bar No. 989164)
mkantercohen@fairelectionscenter.org
*Admitted pro hac vice*

Beauregard William Patterson, Esq.
(WI State Bar No. 1102842)
bpatterson@fairelectionscenter.org
*Admitted pro hac vice*

Nina G. Beck, Esq.
(WI State Bar No. 1079460)
nbeck@fairelectionscenter.org
*Admitted pro hac vice*

*Counsel for Plaintiff George Hawkins*

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2024, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to the following CM/ECF participants:

> Andrew N. Ferguson (VSB #86583)
>    *Solicitor General*
>
> Jason S. Miyares
>    *Attorney General*
>
> Steven G. Popps (VSB #80817)
>    *Deputy Attorney General*
>
> Erika L. Maley (VSB #97533)
>    *Principal Deputy Solicitor General*
>
> Kevin M. Gallagher (VSB #87548)
>    *Deputy Solicitor General*
>
> Office of the Attorney General
> 202 North Ninth Street
> Richmond, Virginia 23219
> (804) 786-2071 – Telephone
> (804) 786-1991 – Facsimile
> AFerguson@oag.state.va.us
>
> Charles J. Cooper (*Pro Hac Vice*)
> Haley N. Proctor (VSB #84272)
> Joseph O. Masterman (*Pro Hac Vice*)
> John D. Ramer (*Pro Hac Vice*)
> COOPER & KIRK, PLLC
> 1523 New Hampshire Avenue, N.W.
> Washington, D.C. 20036
> Tel: (202) 220-9600
> Fax: (202) 220-9601
> ccooper@cooperkirk.com
> hproctor@cooperkirk.com
> jmasterman@cooperkirk.com
> jramer@cooperkirk.com
>
> *Counsel for Defendants Glenn Youngkin and Kelly Gee*

*/s/ Terry C. Frank*
Terry C. Frank, Esq. (VSB No. 74890)
Terry Frank Law
6722 Patterson Ave., Ste. B
Richmond, VA 23226
P: 804.899.8090
F: 804.899.8229
terry@terryfranklaw.com